**Joseph W. BAILEY, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 17834.**

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 11, 1963.

Decided Feb. 6, 1964.

Petition for Rehearing En Banc Denied March 23, 1964.

---

Mr. Richard P. Williams, Washington, D. C., with whom Messrs. Franklin M. Schultz and Charles F. Moore, Washington, D. C., (all appointed by this court) were on the brief, for appellant.

Mr. Robert D. Devlin, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., and Frank Q. Nebeker and Robert B. Norris, Asst. U. S. Attys., were on the brief, for appellee. Mr. Harold J. Sullivan, Asst. U. S. Atty., also entered an appearance for appellee.

Before WILBUR K. MILLER, BASTIAN and J. SKELLY WRIGHT, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

Between 11:00 p. m. and midnight on Friday, July 27, 1962, Joseph W. Bailey shot and killed Reginald Harvey, a brother of his common law wife. On August 20, 1962, he was indicted for manslaughter and on March 5, 1963, he was found guilty by a jury. On this appeal, Bailey contends that a typed statement he gave the police was erroneously received in evidence, that his acquittal should have been directed on the ground of self-defense, and that his conviction should be reversed on the ground that he was not accorded a speedy trial.

As to the principal contention—that Bailey's typed statement should have been rejected on Mallory grounds [1]— Bailey testified that about 12:20 a. m. on Saturday, July 28, 1962, shortly after he fled from the scene of the shooting, he surrendered to a police officer whom he met on the street. He said, "I told him I had shot a fellow and I didn't know whether he was seriously hurt. I told him I was sorry about the whole thing and told him the gun was in my right pocket."

The officer arrested Bailey and took him to the 14th precinct station where he had a conversation with Detective Hack at approximately 12:50 a. m., which Hack described thus:

"A. Mr. Bailey related very briefly that he had been in an argument with the decedent, Reginald Harvey, at 610 46th Place, S. E., when Reginald Harvey came to the apartment of Miss Helena Thompson and that he had shot the decedent. He was not asked to give a statement until we had arrived at the Homicide Squad Office."

They arrived at the Homicide Office about ten minutes later, and at 1:30 a. m. the typing of a statement was begun. It was completed and signed by Bailey at about 2:00 a. m. Saturday, July 28.

At the trial, Bailey told the story of the shooting much as he had done in the typed statement. In cross-examination, Government counsel read portions of the statement to him in an effort to impeach him as to several minor points. This was proper, even if the typed statement had been unlawfully obtained; for the Supreme Court said in Walder v. United States, 347 U.S. 62, 65, 74 S.Ct. 354, 356, 98 L.Ed. 503 (1954):

"It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths. Such an extension of the *Weeks* doctrine [Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652] would be a perversion of the Fourth Amendment.

"Take the present situation. Of his own accord, the defendant went beyond a mere denial of complicity in the crimes of which he was charged and made the sweeping claim that he had never dealt in or

[1]. Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957).

possessed any narcotics. Of course, the Constitution guarantees a defendant the fullest opportunity to meet the accusation against him. He must be free to deny all the elements of the case against him without thereby giving leave to the Government to introduce by way of rebuttal evidence illegally secured by it, and therefore not available for its case in chief. Beyond that, however, there is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility."

To the same effect is Tate v. United States, 109 U.S.App.D.C. 13, 283 F.2d 377 (1960).

■ As he had done in his oral confession and in his typed statement, Bailey admitted from the stand that he had shot Harvey but claimed, as he had done in the typed statement, that he had acted in self-defense. The jury did not agree with him. Although he had objected on *Mallory* grounds to the use of the statement, Bailey's counsel suggested the entire statement be given to the jury, and said he would like to read to the jury "the parts that have not been previously read." Counsel then proceeded to ask Bailey whether he had made certain rather lengthy statements contained in the typed document. He admitted that he had, with a few minor corrections, but stated that the typed statement was incomplete in that it did not include the statement that Harvey was a bully and that he was afraid of him. He also said, inaccurately, that his claim of self-defense was omitted from the statement.

In these circumstances, the trial judge was correct in the first instance in receiving the typed statement over the *Mallory* objection. There was a threshold oral confession, and the typed statement was immediately prepared and signed. Appellant was informed that he need not

make a statement and that he could remain silent. Moreover, Bailey's counsel read to the jury those portions of the typed statement that the prosecutor had omitted.

■ The appellant's argument that the *Mallory* rule was violated is principally based on the fact that he was not presented to a committing magistrate until Monday, July 30, although he had confessed to the shooting and given the largely exculpatory typed statement in the early morning hours of Saturday, July 28. Even if his detention during this subsequent period was unlawful, it did not retroactively make inadmissible the typed statement voluntarily given at its inception. The Supreme Court said of illegal detention subsequent to confession in the Mitchell case:[2]

" * * * But in any event, the illegality of Mitchell's detention does not retroactively change the circumstances under which he made the disclosures. These, we have seen, were not elicited through illegality. Their admission, therefore, would not be use by the Government of the fruits of wrongdoing by its officers. Being relevant, they could be excluded only as a punitive measure against unrelated wrongdoing by the police. Our duty in shaping rules of evidence relates to the propriety of admitting evidence. This power is not to be used as an indirect mode of disciplining misconduct."

In the *Mallory* decision, written thirteen years after the *Mitchell* case, the Supreme Court said, 354 U.S. at 453, 77 S.Ct. at 1359, 1 L.Ed.2d 1479:

" * * * In order adequately to enforce the congressional requirement of prompt arraignment, it was deemed necessary [in McNabb v. United States, 318 U.S. 332, 63 S. Ct. 608, 87 L.Ed. 819] to render inadmissible incriminating statements elicited from defendants *dur-*

2. United States v. Mitchell, 322 U.S. 65, 70–71, 64 S.Ct. 896, 898, 88 L.Ed. 1140 (1944). Mitchell confessed a few minutes after he arrived at the police station but was held eight days before he was presented to a committing magistrate.

*ing* a period of unlawful detention." (Emphasis added.)

Some judges have construed this as an alteration of the *Mitchell* ruling and, in consequence, have held that a voluntary confession is inadmissible if it was followed by a period of illegal detention.

We have held to the contrary in a number of cases. Judge Burger said in Metoyer v. United States: [3]

> "Detention *after* a confession plainly does not affect its admissibility. United States v. Mitchell, 1944, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140. See also 43 Va.L.Rev. 915 (1957)."

Judge Fahy, speaking for a unanimous court in Perry v. United States,[4] said

> " * * * there was no unnecessary delay, prior to the statements, in taking appellant before a committing magistrate in accordance with the terms of Rule 5(a) of the F.R.Crim.P., 18 U.S.C.A. In these circumstances Mallory v. United States, supra, does not apply. On the contrary, the factual situation is essentially like that in United States v. Mitchell, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140, where the Supreme Court held that statements made under similar circumstances were not inadmissible. We accordingly so hold with respect to those now before us."

In Porter v. United States [5] Mr. Justice Reed, sitting with us by designation, after referring to the *Mitchell* case, said:

> " * * * There is no rule of law in federal courts that bars the admissibility of extra-judicial statements of prisoners to the police after arrest and before the time has ex-

pired of permissible detention between arrest and appearance before a magistrate."

In Lockley v. United States [6] we said:

> " * * * A confession given during a period of necessary delay in arraignment is not inadmissible because that period was followed by a period of unnecessary delay. * * "

Judge Edgerton, speaking for a unanimous court in a case where the timetable was largely similar to that in the present situation, said: [7]

> " * * * The critical period is that between arrest and confession. 'Detention *after* a confession plainly does not affect its admissibility. United States v. Mitchell, 1944, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140.' Metoyer v. United States, 102 U.S. App.D.C. 62, 65 n. 4, 250 F.2d 30, 33 n. 4 (1957). * * *"

The *Mitchell* case, relied upon in each of the foregoing decisions, has never been altered by the Supreme Court. Indeed, as recently as 1961, Mr. Justice Frankfurter, the author of the *McNabb, Mitchell* and *Mallory* opinions, said: [8]

> " * * * Of course, our decision in United States v. Mitchell, 322 U. S. 65 [64 S.Ct. 896, 88 L.Ed. 1140], makes clear that confessions made during the period immediately following arrest and before delay becomes unlawful are not to be excluded *under the rule*."

█ The only question in this case is whether Bailey's typed statement—which as we have said was largely exculpatory and in substance was reaffirmed by him while on the stand—was given during lawful detention. We are clearly of the opinion that it was. He confessed to the officer to whom he surrendered, and

---

3. 102 U.S.App.D.C. 62, 65 n. 4, 250 F.2d 30, 33 n. 4 (1957).

4. 102 U.S.App.D.C. 315, 316, 253 F.2d 337, 338 (1957), cert. denied 356 U.S. 941, 78 S.Ct. 785, 2 L.Ed.2d 816 (1958).

5. 103 U.S.App.D.C. 385, 392, 258 F.2d 685, 692 (1958), cert. denied 360 U.S. 906, 79 S.Ct. 1289, 3 L.Ed.2d 1257 (1959).

6. 106 U.S.App.D.C. 163, 166, 270 F.2d 915, 918 (1959).

7. Jackson v. United States, 114 U.S.App. D.C. 181, 184, 313 F.2d 572, 575 (1962).

8. Culombe v. Connecticut, 367 U.S. 568, 599 n. 50, 81 S.Ct. 1860, 1877, 6 L.Ed.2d 1037 (1961).

signed the typed statement as soon as it could be prepared after his arrival at the Homicide Office. This was proper procedure and not unlawful delay. Muschette v. United States, 116 U.S.App.D.C. 239, 322 F.2d 989 (1963). Moreover, the typed statement does not differ essentially from Bailey's own testimony at the trial. We conclude, therefore, that the trial judge did not err in admitting the typed statement. Bailey's other contentions, which we reject, do not seem to us to require discussion.

Affirmed.

J. SKELLY WRIGHT, Circuit Judge, dissenting.

Immediately after Bailey shot a man, allegedly in self-defense, he found the nearest police patrolman and turned himself in, handing over the weapon he had used. Thereafter, with commendable dispatch, Bailey was taken to the nearest precinct station and booked. He there gave the routine administrative information, see 4 D.C.Code § 134 (1961), and admitted the shooting a second time. On completion of the booking, Bailey should have been taken to a committing magistrate "as quickly as possible," Mallory v. United States, 354 U.S. 449, 454, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957), that is, "immediately, and without delay," 4 D.C. Code § 140 (1961). Rule 5(a), F.R.Cr.P. Instead, a Homicide Squad officer arrived at the precinct station and took Bailey "to police headquarters in order to carry out a process of inquiry that [lent] itself, even if not so designed, to eliciting damaging statements to support the arrest and ultimately his guilt," the very thing *Mallory* condemned. 354 U.S. at 454, 77 S.Ct. at 1359, 1 L.Ed.2d 1479.

An hour or more was spent in the Homicide Squad Room at headquarters taking a detailed written confession [1] as to the shooting. The confession included Bailey's claim of self-defense, but differed in significant detail from the testimony presented at trial.[2] Apparently unsure of its admissibility in its case-in-chief, the Government used the confession for impeachment purposes, and made much of the discrepancies. But use of inadmissible confessions for any purpose, including impeachment, is improper. See Annot., 89 A.L.R.2d 478 (1963). A defendant "must be free to deny all the elements of the case against him without thereby giving leave to the Government to introduce by way of rebuttal evidence illegally secured by it, and therefore not available for its case in chief." Walder v. United States, 347 U.S. 62, 65, 74 S.Ct. 354, 356, 98 L.Ed. 503 (1954); see also Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925); Tate v. United States, 109 U.S.App.D.C. 13, 283 F.2d 377 (1960).[3] As in *Jones*,[4] the Government argues that the written confes-

---

[1] The typewritten confession recites that Bailey was advised of his constitutional right to silence. The Homicide Squad officer who took the statement, however, testified as follows:

"Q. Was he informed that he could refuse to give [a statement] and nothing would happen to him?

"A. No, sir.

"Q. Was he informed that under the Fifth Amendment he could stand on his constitutional privilege and refuse to give a statement?

"A. No, sir, he was not."

Moreover, Rule 5(b), F.R.Cr.P., requires that an accused be advised of his constitutional rights by a judicial officer. "The Constitution does not contemplate that prisoners shall be dependent upon government agents for legal counsel and aid, however conscientious and able those agents may be." Von Moltke v. Gillies, 332 U.S. 708, 725, 68 S.Ct. 316, 324, 92 L.Ed. 309 (1948) (opinion of Mr. Justice Black, announcing the judgment of the Court).

[2] For example, at trial the defendant testified that during the argument preceding the shooting he was wearing only shorts, and that the gun was visible in his lap. In the statement to police, Bailey is supposed to have said that he was wearing a shirt, and that the gun was under that shirt.

[3] The only exceptions we have recognized to this rule concern either (1) "sweeping claims" going far beyond the crime charged, to refer to police investigations of other crimes years before (*compare*

sion was merely cumulative to the admissible statements made by Bailey. But we said in *Jones*: "It is difficult to conceive [the] admission [of a confession] being non-prejudicial to the defendant under any circumstances. Here the written confession bore on appellant's claim of self defense, her only real defense." Jones v. United States, supra Note 4, 113 U.S.App.D.C. at 258, 307 F.2d at 399. And of course, statements in the confession are, in no way more admissible because they may have been "ostensibly exculpatory rather than incriminating." Wong Sun v. United States, 371 U.S. 471, 487, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

After the written confession, Bailey was further held in police custody without presentation to a magistrate until the following Monday, a total detention of 60 hours, in violation of Rule 5(a), F.R. Cr.P. "While occurring after completion of the signed confession here challenged," the continued illegal detention "displays and confirms an official disregard by police * * * of the basic rights of the defendant" and is therefore relevant to showing "[t]he undeviating intent of the officers." Haynes v. Washington, 373 U.S. 503, 511 n. 8, 83 S.Ct. 1336, 1342, 10 L.Ed.2d 513 (1963). See *Jones v. United States, supra.*

The Government suggests that the police acted in the interest of the defendant[5] in detaining him long enough to make a recorded statement as to the crime. The 60-hour delay does not strengthen this suggestion as to the police purpose. A more appropriate opportunity for any statements the accused wishes to make in his own best interest would be before "a neutral and detached magistrate" rather than an "officer engaged in the often competitive enterprise

of ferreting out crime." Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948). Rule 5, F.R.Cr.P.

I respectfully dissent.

---

*Agnello v. United States, supra, with Walder v. United States, supra)* and (2) statements as to "lawful proper acts" which are purely "collateral matters" to the issues at bar, *Tate v. United States, supra.* Neither exception is relevant here, where the testimony bore on the central issue of the instant case.

4. Jones v. United States, 113 U.S.App.D.C. 256, 307 F.2d 397 (1962).

5. It is uncontradicted in the record that at the time of taking the confession, the police denied Bailey's request to communicate with his family, and, of course, no counsel was present to advise the accused. Compare *Haynes v. Washington, supra.*