**Colon D. LOCKLEY, Jr., Appellant**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 14775.**

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 27, 1959.
Decided July 2, 1959.
Dissenting Opinion Oct. 2, 1959.

Petition for Rehearing En Banc Denied Oct. 8, 1959.

Burger, J., dissented.

Messrs. John W. Jackson, Washington, D. C., and John B. Evans, Alexandria, Va. (both appointed by this court) for appellant.

Mr. Carl W. Belcher, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., and Charles W. Halleck, Asst. U. S. Atty., at the time the brief was filed, were on the brief, for appellee. Messrs. Harold D. Rhynedance, Jr., and Nathan J. Paulson, Asst. U. S. Attys., also entered appearances for appellee.

Before Mr. Justice BURTON, retired,* and WILBUR K. MILLER and BURGER, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

Colon D. Lockley was tried under four counts of an indictment. The first charged that he and one David Blackney entered a building of Morris Pollin & Sons with intent to steal property of another; the second charged that Lockley and Blackney stole copper tubing valued at $30.00, the property of Harry E. Nau & Company; the third count charged they entered a building of Harry E. Nau & Company with intent to steal the property of another; and the fourth accused them of stealing property of Harry E. Nau & Company having an aggregate value of $365.00, the items and values being enumerated. Lockley denied having participated in the commission of the crimes and, rather inconsistently, pleaded insanity. He stipulated that the housebreaking and larcenies occurred, so the only issues were whether he committed them and, if so, whether he was sane when he did so.

Convicted under all four counts, Lockley received a sentence of from 16 months to four years on Nos. 1, 3 and 4, and one year on No. 2. He appeals. Since the four sentences were concurrent, an affirmance of the judgment with respect to any one of Counts 1, 3 and 4 is sufficient to sustain the maximum term the appellant has been sentenced to serve. For the reasons hereafter given, we affirm the conviction under Count 3, which charged entrance into a building of Harry E. Nau & Company with intent to steal property of another.

The officer who arrested Lockley in his room at about 4:30 a. m. July 24, 1956, testified that appellant admitted going with Blackney to a place in the 1400 block of Rittenhouse Street, N. W., where Blackney broke open a construction shed and stole a "drive-it" gun. This was the offense charged in Count 3 of the indictment. The oral confession, the officer said, was made within 15 minutes after the arrest.

Following the confession in the room where the arrest was made, certain offi-

* Sitting by designation pursuant to § 294(a), Title 28 U.S.Code.

cers drove Lockley around the city to the scenes of various breakings which were being investigated and at about 6:30 a. m. arrived with him at the precinct. At 9:10 a. m. an officer began typing a confession which Lockley signed when it was completed. The written admission repeated the oral confession as to the breaking of the Nau Company's construction shed and added some details as to the loot obtained and its disposition. Lockley was arraigned at 1:45 p. m. on the same day. It does not appear that he was questioned, or that he made any statement, after he signed the written confession which was typed pursuant to interrogation which must have been completed by about 9:00 a. m.

Lockley did not testify that the oral confession was involuntary, but said he did not make any such statement to the arresting officer. Thereupon the Government offered the written confession for the sole purpose of attacking his credibility, and it was admitted for that purpose only under the doctrine of Walder v. United States, 1954, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503.[1] Lockley testified, and the officers denied, that the written confession was extorted from him by police brutality.

Lockley contends the oral statement to the officer was inadmissible under Mallory v. United States, 1957, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479. He argues the written confession was not admissible as proof of guilt[2] because it was involuntary and taken in violation of the Mallory rule; that the Walder case is distinguishable, so the written statement was not admissible even for the limited purpose of impeaching his credibility.

■■ As to Lockley's contention that the oral confession was inadmissible under the Mallory decision, little need be

said. Made within 15 minutes of the arrest, the oral confession does not fall within the doctrine of that case. As to the written confession, we deem it unnecessary to decide whether it was admissible as an attack on credibility under the Walder rule because we hold it was admissible generally,[3] for reasons which follow.

Rule 5(a) of the Federal Rules of Criminal Procedure, 18 U.S.C. requires that "An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available commissioner or before any other nearby officer empowered to commit persons charged with offenses against the laws of the United States."

We read the Mallory case as holding that even a voluntary confession given by a prisoner during an unnecessary delay in arraignment is inadmissible, regardless of whether the delay caused him to confess. The Mallory opinion says, 354 U.S. at page 453, 77 S.Ct. at page 1358, that in the McNabb case (McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819)

"* * * the Court held that police detention of defendant beyond the time when a committing magistrate was *readily accessible* constituted 'wilful disobedience of law.' In order adequately to enforce the congressional requirement of prompt arraignment, it was deemed necessary to render inadmissible incriminating statements elicited from defendants during a period of unlawful detention." (My emphasis.)

The first question is whether the written confession was taken during "a period of unlawful detention" or, stated in another way, during a period of un-

---

1. In its charge the court carefully limited the jurors to considering the written confession for impeachment purposes only, and instructed them not to consider either admission unless they first found it to be voluntary.

2. It was not introduced for that purpose, as we have said.

3. If that be true, Lockley was not prejudiced by the receipt of the confession for the sole purpose of impeaching his credibility.

necessary delay in arraignment. As has been said, Lockley was arrested about 4:30 a. m. and was arraigned about 1:45 p. m. Detaining him from 4:30 a. m. until the opening of the courts that morning—probably about 9:00 a. m.—cannot be said to have been unnecessary, for there is no requirement that a committing magistrate be available at all hours.[4]

 Lockley's detention from about 9:00 a. m. to 1:45 p. m., when he was arraigned, may have been unnecessary. But it does not appear that he made any statement during that period. A confession given during a period of necessary delay in arraignment is not inadmissible because that period was followed by a period of unnecessary delay. United States v. Mitchell, 1944, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140. In the Mitchell case, as here, the prisoner confessed before the beginning of the period of unlawful detention, that is, before unnecessary delay in arraignment. The confession was held admissible.

The Mallory opinion says, 354 U.S. at page 454, 77 S.Ct. at page 1359, " * * * [H]e [an arrested person] is not to be taken to police headquarters in order to carry out a process of inquiry that lends itself, even if not so designed, to eliciting damaging statements to support the arrest and ultimately his guilt." But here the police already had the oral confession concerning the Nau & Company breaking, so there is no reason to suppose they took Lockley to the precinct for the purpose which the Mallory case condemns. The written confession added nothing substantial to the early oral admission with respect to the breaking charged in Count 3.

 The stipulation and the oral confession were sufficient to justify the jury in finding, as it did, that Lockley aided Blackney in breaking into Nau & Company's construction shed with intent to steal, as charged in Count 3.

We do not agree with appellant's complaint that the Government's evidence tending to prove sanity was not sufficient to convince a reasonable jury. There was conflicting testimony on the subject which the jury resolved by finding Lockley was sane when the crimes were committed. We see no reason to disturb the verdict.

Affirmed.

BURGER, Circuit Judge, dissents and reserves the right to file a statement of his views.

BURGER, Circuit Judge (dissenting).

I must dissent because, without additional findings, this court does not have an adequate basis for appellate review of the questions presented. Those questions are: (1) Whether a written confession not offered by the prosecution in its case-in-chief may be used in rebuttal to impeach the defendant's credibility, without a determination by the trial judge as to its admissibility under Mallory v. United States, 1957, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479, and (2) if the confession be found inadmissible as evidence-in-chief, whether, and under what circumstances or to what extent, such written confession may be utilized for impeachment purposes.

If the confession is admissible under Mallory, there would be no occasion to reach the problem of its use for impeachment; it would be admissible for all purposes. However, I am unable to see how this court can pass upon the threshold admissibility question without having before it some findings by the

---

4. In Porter v. United States, 1958, 103 U.S.App.D.C. 385, 392, 258 F.2d 685, 692, Mr. Justice Reed, retired from the Supreme Court and sitting hereby designation, said:
" * * * Surely a man arrested Tuesday night at eleven o'clock for assault need not be taken before a magistrate until the next morning.

No one will assert, without specific proof, that the personnel of our police departments are so regardless of court rulings on interrogation as to require every prisoner to be taken before a magistrate at midnight for every kind of offense or before the opening of the courts in the morning."

trial court as to whether the impeaching written confession was, or was not, admissible under Rule 5(a), Fed.R.Crim. P., 18 U.S.C. Such findings were never made by the District Court since the prosecution did not offer the written confession as direct evidence. The mere fact that it was not offered does not, *in and of itself*, demonstrate inadmissibility.

I would therefore retain jurisdiction and remand for specific findings by the District Judge on this issue. The trial judge on remand would, of course, be free to call for arguments or briefs, or both, precisely as he would have been able to do in the course of trial in resolving that issue out of the presence of the jury. If the written confession is found to be admissible and that determination is affirmed by us on review it would be dispositive of the case.

However, if the written confession is found by the trial court to be inadmissible, a new trial would be required, as I see it, subject to the procedures which I shall now discuss. A confession inadmissible under Rule 5(a) should be received for impeachment only under the most guarded conditions. These conditions have been suggested in part by the Supreme Court in Walder v. United States, 1954, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503. In that case, a narcotics prosecution, the defendant took the stand and "made the sweeping claim that he had never dealt in or possessed any narcotics." Id., 347 U.S. at page 65, 74 S.Ct. at page 356. The prosecution was allowed to introduce for impeachment purposes evidence to the effect that nacotics had been found in the defendant's possession on a previous occasion, even though the discovery of possession on that occasion rested on an admittedly illegal search and seizure. By electing to take the stand and by making a "sweeping claim" on direct examination pertaining to an event *not connected with the instant prosecution*, the Supreme Court held the defendant could not thereafter use the illegality of that previous search as a shield for his current perjury. However, recognizing the dangers inherent in allowing use of "tainted" evidence for any purpose, the Court said:

> "He [defendant] must be free to deny all the elements of the case against him without thereby giving leave to the Government to introduce by way of rebuttal evidence illegally secured by it, *and therefore not available for its case in chief.*" *Ibid.* (Emphasis added.)

From the Walder case I would conclude that before inadmissible evidence can be used for impeachment, three factors must be present: (1) the defendant must elect to take the stand, (2) his testimony which conflicts with the inadmissible statements must do more than merely deny the elements of the crime for which he is being tried, and (3) the inadmissible statements should be received only to the extent that they do not admit the very acts which are essential elements of the crime charged. Presence at the scene of the crime, or knowledge of where the place was located and how to find it, for example, are not matters which constitute criminal acts or, in and of themselves, elements of the crime; therefore the truth or falsity of appellant's sweeping statements concerning them could well be the basis for impeachment.

The instant case is an excellent illustration of the effect of the use of an illegally obtained confession for impeachment. The record shows that shortly after his arrest the defendant allegedly made an oral statement to the arresting officer admitting he and an accomplice broke into a certain shed, and that the accomplice (but not defendant) stole certain property therein. Nearly five hours later, defendant then made a formal and more detailed confession, which was reduced to writing and signed, in which he admitted the larceny. It is the use of this entire written confession by the prosecution in its rebuttal for impeachment that is in issue in this case.

At the trial, defendant took the stand and on direct examination, testified as follows:

"Q. During the time you were inside [where the arrest took place], did you say anything or did he [the arresting officer] say anything about the housebreaking * * * A. No, sir, he really didn't.

* * * * * *

"Q. Did you go with [accomplice * * * to the 1400 block of Rittenhouse Street, Northwest * * ? A. *No, sir, I never been to the place in my life.*

"Q. Did you know anything about that? A. · *No, sir, I don't know where it is. I couldn't go to it.*" (Emphasis added.)

Upon cross-examination, the defendant testified:

"Q. Now, is it your testimony * * * that when you were arrest-ed * * * you did not tell the detective * * * [t]hat you were with [accomplice] * * * when the place was broken into on July 13 or 14? A. No, sir, I did not.

"Q. And that you did not tell him that you were with him when the Drive-it Gun was taken? A. I didn't tell him that, no sir.

* * * * * *

"Q. Do you recall meeting [accomplice] * * * the other defendant in this case? A. No, sir.

"Q. Do you recall meeting him that day? A. No, sir.

"Q. Now, you don't remember anything of that day? A. I didn't see him that day, as I remember. *I don't* [sic] *see him that day.* (Emphasis added.)

"Q. Well, do you recall what you did on July 13, 1956. You say you were at home. A. I think I was. If I wasn't in the hospital, I was home."

From this testimony, it is clear that the defendant in his testimony on trial, (1) denied making any statement to the arresting officer; (2) denied meeting and accompanying the co-defendant in the case to the scene of the crime, and denied having any knowledge of the activities of his accomplice; (3) denied knowing where the looted building was located; and (4) at first denied, though later admitted, signing a written confession five hours after arrest. It was to rebut these statements that the prosecution was permitted to introduce the allegedly inadmissible written statement for impeachment purposes. This confession, which was read in its entirety to the jury, under careful instructions from the trial judge that it was for impeachment only, contained a detailed and complete admission of the crime. The question is whether the defendant did nothing more than "deny all elements of the case against him." He did make a "sweeping claim" involving past occurrences that "I never been to the place in my life. * * * I don't know where it is. I couldn't go to it." Yet, for ostensible impeachment purposes, a full and allegedly illegal confession was allowed to go to the jury. The prejudicial impact of the full confession on the jury cannot be eliminated by instruction from the bench, no matter how carefully, pointedly or precisely phrased.

It is my view that the proper procedure to be undertaken where a defendant testifies in direct contradiction to a written confession previously made but not offered in evidence is for the trial judge, when the confession is offered for impeachment purposes, to compare the defendant's testimony with the alleged confession, and to receive in evidence only that part of the written statement which does not go to the admission of acts which constitute necessary elements of the crime itself, but which at the same time constitute true impeachment of sworn testimony directly and precisely contradicted by the writing. For example, in the instant case the defendant's denial that he had seen his co-defendant on the day of the crime could be contradicted by reading only that part of the written statement in which defend-

ant admitted spending time with the co-defendant; similarly he may be impeached on his statement "I have never been to the place in my life," and "I couldn't go to it." Perhaps he may also be impeached on his denial of signing a written statement by the *fact* of the statement and signature itself, though not its contents.

Admittedly, the process of allowing only part of the confession in evidence is not free from difficulties, but the difficulties are not greater than those under the so-called Jencks statute, 71 Stat. 595 (1957), 18 U.S.C. § 3500 (1958), for example, (and under the pre-Jencks case practice) and certainly not greater than the hazards inherent in letting the full untested written confession in evidence, and then trying to limit the scope and weight which a jury should give to it.[1]

Courts seldom have available a course which is perfect in handling problems like this. The defendant should not be permitted to commit profitable perjury with impunity, but he must be permitted to deny the criminal act charged without thereby giving leave to the government to introduce by way of rebuttal evidence otherwise inadmissible. Walder v. United States, 1954, 347 U.S. 62, 65, 74 S.Ct. 354, 98 L.Ed. 503.[2] Plainly, he is not free to do this under threat of having an entire written confession of the crime received against him by way of rebuttal when he takes the stand and denies his guilt. We must tread carefully when utilizing proscribed evidence for any purpose. The charge given in this case was explicitly framed and, if it were

possible to narrow the thrust and impact of the full confession in these circumstances, the trial judge did all in his power to accomplish that result. But once introduced for this "limited" purpose, the most skillful charge ever framed is hard put to accomplish the prophylactic properties essential to a fair result.

---

1. A coerced confession is rejected because it is not a *true* statement but one exacted by duress or force and thus inherently unreliable. A confession rejected under Rule 5(a) for "unnecessary delay" is not discredited as inherently untrustworthy; it is rejected as a means of enforcing Rule 5(a)—a prophylactic suppression.

2. Any other course, it seems to me, would permit the use of proscribed confessions in rebuttal even in the case where the trial court had taken testimony and