Ronald R. BROWN, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 18487.

United States Court of Appeals
District of Columbia Circuit.

Argued Aug. 6, 1964.

Decided Oct. 15, 1964.

Mr. Lawrence Speiser (appointed by the District Court), Washington, D. C., for appellant.

Mr. B. Michael Rauh, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Frank Q. Nebeker and Victor W. Caputy, Asst. U. S. Attys., were on the brief, for appellee.

Before WILBUR K. MILLER, BURGER and WRIGHT, Circuit Judges.

BURGER, Circuit Judge.

Appellant was convicted of assault with intent to commit robbery under 22 D.C. CODE ANN. § 501 (1961), after the Juvenile Court waived jurisdiction pursuant to D.C.CODE ANN. § 11–914 (1961, Supp. II 1963). On appeal in forma pauperis he assigns numerous errors relating to his trial; we discuss in detail three of his contentions.

The testimony showed that one M. G. Hayes was accosted by two assailants at about 2:30 a. m., who knocked him down and took property from his person. His attackers fled when an Armed Services Police cruiser approached. The occupants of that car, two military police officers, witnessed the entire affray, gave chase and captured appellant. Their testimony constituted the bulk of the case for the Government. The only other witnesses for the prosecution were Metropolitan Police Officers. A Metropolitan Police Officer, who made the formal arrest, testified that at approximately 3:00 a. m. that morning he had assumed custody of appellant from the two military policemen; another officer testified on rebuttal as to certain statements made at the Juvenile Receiving Home by appellant and appellant's alleged companion, one Belton, who had turned himself in and was retained within the jurisdiction of the Juvenile Court. Belton testified for the defense that he alone had made the assault and gone through Hayes' pockets. Appellant's testimony in his own behalf was substantially to the same

effect. The complainant, Hayes, was not produced by the Government, although personally served;[1] a stipulation of his Grand Jury testimony was read to the trial jury.

(1)

The trial judge elected to conduct the *voir dire* examination of the jury pursuant to FED.R.CRIM.P. 24(a):

"The court may permit the defendant or his attorney and the attorney for the government to conduct the examination of prospective jurors or may itself conduct the examination. In the latter event the court shall permit the defendant or his attorney and the attorney for the government to supplement the examination by such further inquiry as it deems proper or shall itself submit to the prospective jurors such additional questions by the parties or their attorneys as it deems proper."

Appellant requested that the District Judge make the following query on *voir dire*: "Would you give greater credence to the testimony of a law enforcement officer merely because he is an officer as compared to any other witness." Although the trial court possesses a "broad discretion as to the questions to be asked" on *voir dire,* the exercise of that discretion is "subject to the essential demands of fairness." Aldridge v. United States, 283 U.S. 308, 310, 51 S.Ct. 470, 471, 75 L.Ed. 1054 (1931). In Sellers v. United States, this court held to be reversible error the District Court's failure to ask on *voir dire,* when requested, whether any juror would be " * * * inclined to give more weight to the testimony of a police officer *merely because he is a police officer* than any other witness * * *." (Emphasis added.) 106 U.S.App.D.C. 209, 210, 271 F.2d 475, 476 (1959) (per curiam). *Accord,* Chavez v. United States, 258 F.2d 816, 819 (10th Cir. 1958) (dictum), cert. denied sub nom. Tenorio v. United States, 359 U.

[1.] The arresting police officer testified that upon visting complainant Hayes' hotel he determined that about two weeks prior

to the trial Hayes had moved to North Carolina.

S. 916, 79 S.Ct. 592, 3 L.Ed.2d 577 (1959). Here, the District Court denied the almost identical requested question, relying on Gorin v. United States, 313 F. 2d 641, 646–47 (1st Cir.), cert. denied, 374 U.S. 829, 83 S.Ct. 1870, 10 L.Ed.2d 1052 (1963). The *Gorin* case is, of course, not controlling in this jurisdiction and should not be followed by the District Court at the expense of our own holding in the *Sellers* case.[2] In the present case, as in *Sellers'*, "virtually the entire case for the prosecution" consisted of testimony from law enforcement officers. The circumstances of the *Sellers* case are very similar and compel reversal here; moreover, we do not read *Sellers* as having been narrowly decided.[3] We construe that case as establishing that when important testimony is anticipated from certain categories of witnesses, whose official or semi-official status is such that a juror might reasonably be more, or less, inclined to credit their testimony, a query as to whether a juror would have such an inclination is not only appropriate but should be given if requested. Failure to make appropriate inquiry, when requested, does not necessarily require reversal; the issue turns on the degree of impact which the testimony in question would be likely to have had on the jury and what part such testimony played in the case as a whole. In this case, at the opening of trial, the Government had announced that it would not be able to produce the complainant, who had left the jurisdiction, but would rely on the testimony of the two military police officers who had witnessed the assault and apprehended appellant. That the two Metropolitan Police Officers were also members of this police category serves only to emphasize the need for the requested inquiry to the panel.[4] Responses to the requested query might have supplied defense counsel, or indeed the prosecutor, with relevant and useful information for exercising peremptory challenges or challenges for cause. We hold that under the *Sellers* case failure to inquire of the jury panel as requested regarding possible predilections concerning police testimony was reversible error in this case. We emphasize that independent of the scope of the requested query, the phrasing of the court's inquiry should include whether any juror would tend to give either more *or less* credence because of the occupation or category of the prospective witness.

Since we remand for a new trial, we shall treat certain other of appellant's contentions raising important questions which are likely to arise on retrial.

(2)

When appellant's juvenile companion, Belton, testified, the prosecutor on cross-examination asked him where he was then residing. Defense counsel twice made timely and pointed objection to this question and the probable response, claiming at the bench that the answer would be "The National Training School" where appellant had been committed for complicity in another charge. The ques-

2. In *Gorin, supra,* the proposed question did not include the phrase "merely because he is a government agent." A similar omission was relied upon by this court in *Sellers, supra,* to distinguish the affirmance in Chavez v. United States, *supra,* 106 U.S.App.D.C. at 210 n. 3, 271 F.2d at 476 n. 3.

3. The Government attempts to distinguish the present case from *Sellers* on the ground that in *Sellers* the police officer on whose testimony the prosecutor's case was based was an undercover agent on police work when witnessing the alleged criminal activity whereas here the military police officers were acting merely as civilians. This is a distinction without a real difference; the point is that the jury would be aware of their special status when they testified. In any event, the military police here were more than "witnesses"; they performed the functions of police officers even though in a legal sense they had no power to make any more than a citizen's arrest.

4. The stipulation of the complainant's Grand Jury testimony, although introduced as direct evidence and implicating appellant in the assault, varied slightly from the testimony of the two military policemen and was not nearly so damaging as was their testimony.

tion was allowed and the predicted answer was forthcoming. The prosecutor then asked: "For what particular crime? Was it for this crime?"; Belton replied, "No, sir."

The Government contends that this line of questioning was proper to lay a foundation for cross-examination of Belton on his opportunity to discuss the case with appellant and fabricate testimony. This argument suffers from two basic falacies. First, the testimony relevant to this argument was brought forth subsequently when Belton admitted that he and appellant had been together at the Receiving Home, not the National Training School, where Belton had been placed only one day prior to testifying. We assume that the prosecutor was unaware of this fact and that his attempt to lay a foundation of opportunity for collusion was in good faith; nevertheless it was his responsbility to appraise the possible prejudice of the predicted answer before asking a question otherwise probably inadmissible. Secondly, while in Juvenile Court custody pending decision on waiver of jurisdiction, appellant would have been detained on this charge only at the Receiving Home, a place of "temporary detention" provided by the Commissioners of the District of Columbia under the

supervision of the Department of Public Welfare.[5] A juvenile would be committed to the National Training School for Boys, which is under the aegis of the Director of the Bureau of Prisons, acting for the Attorney General,[6] only after a Juvenile Court finding of involvement in a charged offense.[7] Accordingly, the prosecutor's purported purpose of demonstrating opportunity for collusion between appellant and his juvenile companion at the National Training School was impossible of realization in this case; appellant could not have been there on this charge. Thus, the question as to where Belton was then residing elicited information irrelevant even on its purported justification.[8]

The Government does not contend that the inquiry was permissible on impeachment grounds; it was not. Although conviction of certain criminal offenses is. a valid subject of examination aimed toward impeachment of a witness,[9] a finding of involvement in law violation resulting in commitment to the National Training School is not the equivalent of a. criminal conviction on any theory. Thomas v. United States, 74 App.D.C 167, 169–171, 121 F.2d . 905, 907–909 (1941) (alternative ground).[10] The Dis-

---

5. D.C.Code Ann. §§ 16–2306, 2313(c) (Supp. III 1964); D.C.Code Ann. §§ 3–116, Fourth, 126(4) (1961); D.C.Code Ann. § 1 App. p. 129, Reorg.Order No. 58, Part IV, subd. H; cf. United States v. Dickerson, 106 U.S.App.D.C. 221, 223–224, 271 F.2d 487, 489–490 (1959).

6. 18 U.S.C. § 4082; 5 U.S.C. § 133t note (1958), Reorg.Plan No. II, Part 1, § 3 (b) (1939).

7. See D.C.Code Ann. § 16–2308(a) (2) (Supp. III 1964).

8. Moreover a broad, non-prejudicial question could have been framed as to how often and for what length of time appellant and the juvenile had seen each other and whether they had in fact discussed this subject. Cf. Sykes v. United States, 79 U.S.App.D.C. 97, 98, 143 F.2d 140, 141 (1944) (per curiam).

9. See, e.g., Goode v. United States, 80 U.S.App.D.C. 67, 68, 149 F.2d 377, 378 (1945) (per curiam); D.C.Code Ann.

§ 14–305 (Supp. III 1964) : "The fact of conviction [of crime] may be given in evidence to affect * * * credibility as a witness, either upon the cross-examination of the witness or by evidence aliunde * * *." See also III Wigmore, Evidence § 980 (3d ed. 1940); Bostic v. United States, 68 App.D.C. 167, 168–169, 94 F.2d 636, 637–638 (1937), cert. denied, 303 U.S. 635, 58 S.Ct. 523, 82 L.Ed. 1095 (1938); Campbell v. United States, 85 U.S.App.D.C. 133, 134–135, 176 F.2d 45, 46–47 (1949).

10. See Price v. United States, 282 F.2d 769 (4th Cir. 1960) (per curiam) (dictum following Thomas), cert. denied, 365 U.S. 848, 81 S.Ct. 810, 5 L.Ed.2d 812 (1961); White v. Reid, 125 F.Supp. 647, 650 (D.D.C.1954). The Thomas case has been cited with approval by this court recently in Pee v. United States, 107 U.S.App.D.C. 47, 50 n. 12, 274 F.2d 556, 559 n. 12 (1959), and Shioutakon v. District of Columbia, 98 U.S.App.D.C. 371, 374 n. 14, 236 F.2d 666, 669 n. 14 (1956).

trict of Columbia Code [11] only makes provision for impeachment upon showing "conviction of crime." [12] Indeed, the prosecutor's question to Belton characterized the occasion for his commitment to the National Training School as "for [a] crime." The very form of the question ignored both the intent of the statute on impeachment and the essential nature and purpose of the Juvenile Court Act. Because of the purpose of the Juvenile Court Act and the absence of procedural safeguards, a finding of involvement against a juvenile does not have the same tendency to demonstrate his unreliability as does a criminal conviction for the adult offender.[13]

■■ Moreover, the juvenile himself has a protected interest in maintaining the credibility of his public testimony. Whereas a convict—barring pardon—is forever faced with the hardships of a permanent criminal record,[14] in the case of a juvenile "[i]t would be a serious breach of public faith * * * to permit these informal and presumably beneficent procedures to become the basis for criminal records, which could be used to harass a person throughout his life."

Thomas v. United States, 74 App.D.C. at 170–171, 121 F.2d at 908–909. (Footnotes omitted.) [15] To this end the Juvenile Court Act provides:

"An adjudication upon the status of a child in the jurisdiction of the court does not operate to impose any of the civil disabilities ordinarily imposed by conviction, and a child is not deemed a criminal by reason of an adjudication. An adjudication is not deemed a conviction of a crime, and a child may not be charged with or convicted of a crime in any court, except as provided by section 11–1553."

D.C.CODE ANN. § 16–2308(d) (Supp. III 1964). Congress intended that a child found involved by the Juvenile Court should be insulated from the disabilities attending conviction for a crime.[16] We therefore hold that "the language of the statute expressly forbids the interpretation that the disposition of a child in a juvenile court proceeding constitutes conviction of a crime," and that since "nothing short of conviction of crime is sufficient to warrant" impeachment under D.C.CODE ANN. § 14–305 (Supp. III

11. D.C.CODE ANN. § 14–305 (Supp. III 1964), *supra* note 9.

12. *Cf.* Thomas v. United States, 74 App. D.C. at 171, 121 F.2d at 909.

13. Juvenile offenders are not given the same procedural constitutional rights as adults in a criminal case. Pee v. United States, 107 U.S.App.D.C. 47, 274 F.2d 556 (1959); White v. Reid, 125 F.Supp. 647 (D.D.C.1954). *But cf.* Shioutakon v. District of Columbia, 98 U.S.App.D.C. 371, 374 n. 18, 236 F.2d 666, 669 n. 18 (1956); In re Poff, 135 F.Supp. 224 (D.D.C.1955). "These strict [constitutional] safeguards * * * are wholly inappropriate for the flexible and informal procedures of the Juvenile Court which are essential to its *parens patriae* function." Harling v. United States, 111 U.S. App.D.C. 174, 177, 295 F.2d 161, 164 (1961) (en banc); see United States v. Dickerson, 106 U.S.App.D.C. at 221, 225, 271 F.2d at 487, 491 (1959). Thus, the Juvenile Court's method of finding of involvement in law violation lacks the inherent safeguards which the adversary process affords to an accused in a crim-

inal trial where a conviction is one possible result. Further, society makes no effort to avoid the stigma of moral and legal culpability on the convicted person. Compare Shioutakon v. District of Columbia, 98 U.S.App.D.C. at 374, 236 F. 2d at 669. Thus, the fact of criminal conviction is a permissible indicator of basic untrustworthiness and dishonesty and serves logically to impeach the testimony of a convict.

14. Compare Tatum v. United States, 114 U.S.App.D.C. 49, 310 F.2d 854 (1962) (per curiam).

15. "There is no more reason for permitting their use for such a purpose, than there would be to pry into school records or to compile family and community recollections concerning youthful indiscretions of persons who were fortunate enough to avoid the juvenile court." Thomas v. United States, *supra* 121 F. 2d at 909.

16. See D.C.CODE ANN. § 16–2316 (Supp. III 1964) (calling for liberal construction of the Juvenile Court Act).

1964), the questions to Belton which elicited the fact of his commitment to the National Training School purportedly for a "crime" were impermissible. Thomas v. United States, *supra*. (Footnotes omitted.) Since Belton's testimony exculpating appellant comprised a major portion of appellant's defense at trial, we cannot say it was harmless error to admit testimony for the purpose of showing "criminal" nature on Belton's part in order to diminish his credibility as a witness. See Kotteakos v. United States, 328 U.S. 750, 764–765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); Fahy v. Connecticut, 375 U.S. 85, 91–92, 84 S.Ct. 229, 11 L.Ed. 2d 171 (1963).

### (3)

After appellant had taken the stand and admitted his presence at the scene of the crime charged, he denied participation in the plan or actual execution of the robbery. The prosecutor then cross-examined him as to certain admissions he purportedly had made to a police officer at the Receiving Home and appellant denied making any admissions. On rebuttal the Government called the police officer, who testified, over objection, as to the alleged admissions made to him by appellant at the Receiving Home while appellant was still in the custody of the Juvenile Court. Ostensibly the testimony about these admissions was offered to impeach appellant's testimony that he had not discussed the idea of a mugging with his juvenile companion prior to the assault. The Government concedes that testimony as to any oral admissions made by appellant while within the custody of the Juvenile Court would not have been admissible as direct proof under Harling v. United States, 111 U.S.App.D.C. 174, 295 F.2d 161 (1961) (en banc).

Whether testimony as to inconsistent statements concerning criminal design made during Juvenile Court custody would be admissible for impeachment when limited to peripheral "non-inculpatory matter," by analogy to Tate v. United States, 109 U.S.App.D.C. 13, 18, 283 F.2d 377, 382 (1960) (as to a *Mallory* confession), we need not here decide.[17] The officer's testimony here was not limited to the question of criminal plan but revealed appellant's alleged admissions of complicity in the offense. In Tate v. United States, *supra*, we quoted from Walder v. United States, 347 U.S. 62, 65, 74 S.Ct. 354, 98 L.Ed. 503 (1954):

> [The defendant] "must be free to deny all the elements of the case against him without thereby giving leave to the Government to introduce by way of rebuttal evidence illegally secured by it, and therefore not available for its case in chief." * * * On the other hand a defendant cannot "turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths. * * * [T]here is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility."

109 U.S.App.D.C. at 15, 283 F.2d at 379. See Bailey v. United States, 117 U.S.App.D.C. 241, 328 F.2d 542, 543–544 (1964) (also quoting *Walder* to the same effect); Lockley v. United States, 106 U.S.App.D.C. 163, 167, 270 F.2d 915, 919 (1959) (dissenting opinion; same). Assuming without deciding that these standards permit similar use of a *Harling* confession for impeachment, see note 17

---

17. Nor do we reach appellant's contention that the reasoning of Harling v. United States, *supra*, requires total exclusion of all statements made during Juvenile Court custody as distinguished from the permissible limited use for impeachment purposes of evidence obtained in violation of a defendant's constitutional or statutory rights. See Walder v. United

States, 347 U.S. 62, 74 S.Ct. 354, 98 L. Ed. 503 (1954); Bailey v. United States, 117 U.S.App.D.C. 241, 328 F.2d 542 (1964); Tate v. United States, *supra;* Lockley v. United States, 106 U.S.App. D.C. 163, 166, 270 F.2d 915, 918 (1959) (dissenting opinion). See also White v. United States, No. 18355, D.C.Cir., Sept. 17, 1964.

*supra,* we hold that defense objections to those parts of the officer's testimony involving indispensable elements of the crime charged should have been sustained.

We have examined appellant's other contentions and find no other errors warranting reversal. The judgment appealed from is reversed and the case remanded for a new trial.

Reversed and remanded.

WILBUR K. MILLER, Circuit Judge (concurring).

I join in the foregoing opinion because I think the *Sellers* case requires reversal. I dissented in that case and still think it is wrong, but I am bound to follow it.

WRIGHT, Circuit Judge (concurring).

I agree that the conviction should be reversed. In the interest of brevity, I shall simply state my reasons *seriatim.*

1. The trial court denied a defense motion that defendant be tried as a juvenile without holding a hearing to determine the legal and factual basis for the motion. 11 D.C.Code § 914 (1961); Franklin v. United States, 117 U.S.App. D.C. 331, 336, 330 F.2d 205, 210 (1964); Pee v. United States, 107 U.S.App.D.C. 47, 50–52, 274 F.2d 556, 559–561 (1959).

2. The trial court refused to ask the jurors on *voir dire* examination whether they would place more credence in the testimony of a law enforcement officer, merely because he is an officer, than in the testimony of any other witness. Sellers v. United States, 106 U.S.App.D.C. 209, 271 F.2d 475 (1959).

3. The trial court permitted for impeachment purposes, over objection, the use of alleged statements made by the appellant, a juvenile, while in the jurisdiction of the Juvenile Court. Harling v. United States, 111 U.S.App.D.C. 174, 295 F.2d 161 (1961).

4. The Government was permitted, over objection, to bring out for impeachment purposes that a juvenile defense witness had been committed by the Juvenile Court to the National Training School for Boys on another charge. Pee v. United States, *supra.*

5. The trial court denied a defense motion for production of a report filed by a police officer who testified for the Government. Such reports are producible under the Jencks Act, 18 U.S.C. § 3500. Clancy v. United States, 365 U.S. 312, 81 S.Ct. 645, 5 L.Ed.2d 574 (1961); Campbell v. United States, 365 U.S. 85, 92–99, 81 S.Ct. 421, 5 L.Ed.2d 428 (1961).

6. The trial court refused on request to give a missing witness instruction relating to the absence of the prosecuting witness. Graves v. United States, 150 U.S. 118, 121, 14 S.Ct. 40, 37 L.Ed. 1021 (1893); Billeci v. United States, 87 U.S.App.D.C. 274, 278–279, 184 F.2d 394, 398–399, 24 A.L.R.2d 881 (1950).

The above enumeration of error is sufficient in my judgment to require a new trial.