In the Matter of J. T., Jr.

In the Matter of J. H. M.

In the Matter of D. W., Jr.

Nos. 5941, 5978 and 6013.

District of Columbia Court of Appeals.

Argued Oct. 27, 1971.

Decided May 12, 1972.

Miller W. Marshall, Washington, D. C., appointed by this court, for appellants.

E. Calvin Golumbic, Asst. Corp. Counsel, with whom C. Francis Murphy, Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, were on the brief, for appellee.

Before GALLAGHER, NEBEKER and YEAGLEY, Associate Judges.

YEAGLEY, Associate Judge:

These consolidated appeals raise the constitutional issue of whether juveniles who by virtue of alleged misconduct are charged under the D.C.Code with acts that would constitute crimes if committed by an adult, and are thereafter transferred to the Family Division as juveniles pursuant to D.C.Code 1967, § 16-2302 (Supp. IV, 1971), may be denied a jury trial by authority of an act of the Congress of the United States.[1]

A petition was filed against each appellant in the Family Division of the Superior Court of the District of Columbia pursuant to D.C.Code 1967, § 16-2301 et seq. (Supp. IV, 1971), alleging the commission of a nonpetty criminal offense or offenses.[2] A motion for a jury trial was denied in each

---

1. D.C.Code 1967, § 16-2316(a) (Supp. IV, 1971).

2. Appellant D.W., Jr. was charged with burglary, in violation of D.C.Code 1967, § 22-1801(a) (Supp. IV, 1971); grand larceny, in violation of D.C.Code 1967, § 22-2201; and possession of stolen proper-

ty, in violation of D.C.Code 1967, § 22-2205. Appellant J.T., Jr. was charged with petit larceny, in violation of D.C. Code 1967, § 22-2202. Appellant J.H.M. was charged with carnal knowledge and abuse of a child under 16 years of age, in violation of D.C.Code 1967, § 22-2801 (Supp. IV, 1971).

case and upon trial by the court each appellant was found to have committed the acts alleged in the petitions. Juvenile D. W., Jr. was thereafter committed to the custody of the Social Services Administration for a period not to exceed 2 years; J. H. M. was placed on 2 years probation to the court, while J. T., Jr. was continued on probation.

The appellants' contention is in essence that the sixth amendment right to trial by jury and the jury trial provision of article III, section 2, clause 3 of the Constitution apply directly to the federal courts, including the article I, clause 17 courts of the District of Columbia and are as applicable to juveniles as to adults. Appellants also suggest that complete resolution of the constitutional question as to whether a juvenile alleged to be delinquent may be tried without a jury compels also an examination of the scope of the protection afforded by the fifth amendment's provision that no person be deprived of life, liberty or property without due process of law.

The trial court overruled the motions of the appellants in accordance with a provision of the new District of Columbia Court Reform and Criminal Procedure Act of 1970, D.C.Code 1967, § 16–2316(a) (Supp. IV, 1971) which reads in pertinent part: "The Division shall, without a jury, hear and adjudicate cases involving delinquency. . . . " In adopting this legislation Congress followed a suggested provision in the Uniform Juvenile Court Act, section 24(a) [3] and a recommendation in the HEW Guide.[4] Trying juveniles without a jury is also said to be the practice in nearly four-fifths of the states.[5]

Since the jury trial guarantee of article III, section 2, clause 3 relates to "the trial of all crimes", and the wording of the sixth amendment [6] restricts its application to "criminal prosecutions", the validity of appellants' argument depends on whether juvenile proceedings, such as these, to determine delinquency are criminal prosecutions.

▪ We will consider the argument of appellants that they are entitled to a jury trial by those two constitutional provisions in light of the guarantee of the sixth amendment. Even if we should assume that the jury trial guaranty of article III, section 2, clause 3 is applicable to federal courts created under article I, it has not been shown, and we fail to perceive, that it confers any greater rights than does the sixth amendment which is directly applicable to the District of Columbia.[7]

In view of the nature of procedures established for juveniles in the District of Columbia (see appendix) we believe that the issue raised by appellants is controlled, at least as to the application of the sixth amendment, by the recent holding of the Supreme Court in McKeiver v. United States, 403 U.S. 528, 91 S.Ct. 1976, 29 L. Ed.2d 647 (1971). In that case the issue was whether the sixth amendment, in light of its imposition on the states by force of the fourteenth amendment, assures the right to trial by jury in the adjudicative phase of juvenile court delinquency proceedings established under the laws of the State of Pennsylvania. The Court noted

---

3. Drafted by the National Conference of Commissioners on Uniform State Laws and recommended by it for enactment in all the states August 1, 1968, and approved by the American Bar Association August 8, 1968.

4. Children's Bureau, HEW, Legislative Guide for Drafting Family and Juvenile Court Acts 29 (1969).

5. Lawton, Juvenile Proceedings—The New Look, 20 Am.U.L.Rev. No. 2–3, at 342–63 (1970–71).

6. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . ."

7. Bolling v. Sharpe, 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954) ; Capital Traction Co. v. Hof, 174 U.S. 1, 5, 19 S.Ct. 580, 43 L.Ed. 873 (1899) ; Callan v. Wilson, 127 U.S. 540, 8 S.Ct. 1301, 32 L.Ed. 223 (1888).

that not long before it had decided in Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968) that:

> The right to an impartial jury "[i]n all criminal prosecutions" under federal law is guaranteed by the Sixth Amendment. Through the Fourteenth Amendment that requirement has now been imposed upon the States "in all criminal cases which—were they to be tried in a federal court—would come within the Sixth Amendment's guarantee." . . . [8]
> [403 U.S. at 540, 91 S.Ct. at 1984.]

Justice Blackmun, speaking for the majority in *McKeiver*, said that the argument of petitioners that the sixth amendment guarantees a juvenile a right to trial by jury necessarily equates the adjudicative phase of the juvenile proceeding with the criminal trial to which the sixth amendment is applicable. He observed, quoting from Justice Roberts of the Pennsylvania Supreme Court, that a declaration of delinquency "is significantly different from and less onerous than a finding of criminal guilt" (403 U.S. at 540, 91 S.Ct. at 1983) and then went on to say, " . . . the juvenile court proceeding has not yet been held to be a 'criminal prosecution,' within the meaning and reach of the Sixth Amendment. . . ." 403 U.S. at 541, 91 S. Ct. at 1984. We note that earlier court decisions in the District of Columbia [9] as well as decisions in other jurisdictions [10] have generally agreed that a finding of delin-

quency is not the equivalent of a judgment of criminal guilt with its attendant punishment. Furthermore, in the new Code Congress clearly indicated its intent not to treat juveniles as criminal offenders by providing:

> A consent decree, order of adjudication, or order of disposition in a proceeding under this subchapter is not a conviction of crime and does not impose any civil disability ordinarily resulting from a conviction, nor does it operate to disqualify a child in any future civil service examination, appointment, or application for public service in either the Government of the United States or of the District of Columbia.[11]

This is in consonance with the philosophy of the juvenile system which embraces the view that the pseudocriminal acts of the juvenile are not comparable to the mature and malevolent intent inherent in a crime committed by an adult. As Justice White observed in concurring in *McKeiver*, " . . . his conduct is not deemed so blameworthy that punishment is required to deter him or others. . . . Supervision or confinement is aimed at rehabilitation . . . ." 403 U.S. at 553, 91 S.Ct. at 1989.

The Court concluded in *McKeiver* that the Duncan v. Louisiana doctrine that criminal defendants in the states are entitled to a jury trial under the sixth amendment has

---

8. However, of some significance to a resolution of the jury rights of a juvenile, the Court in Duncan v. Louisiana, 391 U.S. 145 (1968) went on to say at 158, 88 S.Ct. 1444, at 1452, 20 L.Ed.2d 491:

 . . . We would not assert, however, that every criminal trial—or any particular trial—held before a judge alone is unfair or that a defendant may never be as fairly treated by a judge as he would be by a jury. Thus we hold no constitutional doubts about the practices, common in both federal and state courts, of accepting waivers of jury trial and prosecuting petty crimes without extending a right to jury trial. . . .
 [Footnotes omitted.]

The Court had observed earlier in its opinion that: "A criminal process which was fair and equitable but used no juries is easy to imagine." *Id.* at 150 n. 14, 88 S.Ct. at 1448.

9. Pee v. United States, 107 U.S.App.D.C. 47, 49, 274 F.2d 556, 558 (1959) ; Brown v. United States, 119 U.S.App.D.C. 203, 338 F.2d 543 (1964).

10. *See* appendix to opinion of Judge Prettyman in Pee v. United States *supra* where authorities are listed from fifty-one jurisdictions in this country supporting the proposition that proceedings in juvenile courts are not criminal cases.

11. D.C.Code 1967, § 16–2318 (Supp. IV, 1971).

no application to the sort of juvenile proceeding that was involved in the Pennsylvania case.

In arriving at its ultimate decision on the jury trial issue, the Court was compelled necessarily to determine also whether the denial of a jury trial under such circumstances, even though not guaranteed a juvenile by the sixth amendment, would be contrary to the requirements of due process.[12] The fifth amendment which is directly applicable to his jurisdiction[13] assures everyone due process at the hands of the federal government in language practically identical to the fourteenth amendment's protection of persons against the authority of the states.

Recently, and prior to its decision in McKeiver, the Supreme Court had several occasions to consider what effect the fourteenth amendment should have on juvenile proceedings with the result that many of the constitutional requirements of an adult criminal trial were imposed on state juvenile proceedings. In each of those cases the Court in resolving the demands of due process applied the test of "fundamental fairness". In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); In re

Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed. 2d 527 (1967); Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966).[14]

Since the Court in Duncan v. Louisiana, supra, held that the fourteenth amendment imposed the jury trial requirements of the sixth amendment on criminal trials in the states, it became necessary for the Court in McKeiver to determine whether the jury trial was an essential ingredient of due process and fair treatment in the adjudication of juvenile delinquency where the particular proceeding afforded the juvenile all of the safeguards required by Winship, Kent and Gault.

Justice Blackmun observed in McKeiver that the juvenile proceeding has not yet been held to be a criminal trial within the meaning and reach of the sixth amendment, and after expressing some misgivings about the results flowing from the special juvenile process, concluded for the Court that while a juvenile must be accorded "due process and fair treatment" that "trial by jury in the juvenile court's adjudicative stage is not a constitutional requirement." 403 U.S. at 545, 91 S.Ct. at 1986.

12. Similarly, it had been held as early as 1954 by Chief Judge Laws that a juvenile proceeding in this jurisdiction was not criminal in nature but was an adjudication upon the status of a child in the nature of a guardianship imposed by the state as parens patriae, and consequently the juvenile was not entitled to a jury trial under the fifth amendment. White v. Reid, 125 F.Supp. 647, 649 (D.D.C. 1954). See also Brown v. United States, supra.

13. See note 7, supra.

14. In Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966) the Court held that the "fundamental fairness" test would prohibit a court from waiving jurisdiction over the juvenile without holding a hearing, making findings, or stating reasons. In reversing the Court said at 562, 86 S.Ct. at 1057:

We do not mean by this to indicate that the hearing to be held must conform with all of the requirements of a criminal trial or even of the usual administrative hearing; but we do hold that the hearing must measure up to the essentials of due process and fair treatment.

In In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 1445, 18 L.Ed.2d 527 (1967), the Court said that "the essentials of due process and fair treatment" include written notice of the charges; advice as to the right of counsel—retained or appointed; confrontation and cross-examination of the witnesses against him, and the protection of the privilege against self-incrimination.

In In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), the Court held that the safeguard of proof beyond a reasonable doubt is as much required in a juvenile hearing as were the safeguards applied by the Court in Gault where, we note that in detailing the constitutional guarantees and protections that would have been accorded the juvenile had he been charged as an adult, the Court (387 U.S. at 29, 87 S.Ct. 1428) did not list a right to trial by jury.

Certainly the direct application of the fifth amendment to the District of Columbia cannot command a different result than that which the Supreme Court has said is required by the fourteenth amendment's application to the states, particularly in view of the safeguards accorded the juvenile in proceedings in this jurisdiction for the adjudication of delinquency. An examination of those procedures, as summarized in the appendix, reveals a very careful effort to grant the juvenile a fair hearing by American judicial standards without incorporating all of the elements of an adult criminal trial.

While a child is not granted a jury trial, the provisions of the D.C.Code concerning the rights of the juvenile and the procedures to be followed incorporate all of the other elements that in our system are generally recognized as necessary to a fair hearing. We are not prepared to say that due process or fundamental fairness in a delinquency hearing is denied when such proceedings are conducted by an experienced judge. The inquiry does not pose a question of guilt or innocence, typical of the issue to be decided by a jury, but rather a question of delinquency aimed at rehabilitation. We hold that the due process standard of fundamental fairness is met by the D.C.Code. This is in keeping with the majority conclusion in *McKiever, supra.*

Although, as we have seen, the Supreme Court has had ample opportunity in a number of cases, it has not yet said that all procedures constitutionally assured to an adult accused of crime also are to be made available to the juvenile in a delinquency proceeding. Justice Blackmun aptly observed

in his opinion in *McKeiver, supra* at 551 of 403 U.S., at 1989 of 91 S.Ct. that:

> If the formalities of the criminal adjudicative process are to be superimposed upon the juvenile court system, there is little need for its separate existence. . . .

We have no good reason to believe that the full imposition of all the procedures and requirements of an adult criminal trial would benefit either the child or the community. Since the granting of a jury trial to a juvenile is not constitutionally required, and the Congress has directed that such proceedings in the District of Columbia shall be without jury,[15] we affirm the ruling of the Family Division in this case.

Affirmed.

## APPENDIX

The Juvenile Code in the District of Columbia provides that the child and his parents are entitled to notice and a copy of the petition[1] and to be represented by counsel.[2] If the child is detained a detention or shelter care hearing must be held not later than the next day. If the judge finds detention or shelter care is required he shall hear evidence to determine if there is probable cause to believe the allegations in the petition are true.[3] Upon objection a judge who conducted a detention or shelter care hearing shall not conduct the fact-finding hearing[4] which is to be held without a jury.[5] Evidence is restricted to that which is "competent, material and relevant".[6] The child has the right to be present during a fact-finding hearing involving delinquency,[7] and also the right of confron-

---

15. For articles examining the District of Columbia juvenile system, *see* Lawton, Juvenile Proceedings—The New Look, 20 Am.U.L.Rev. No. 2–3, at 342–63 (1970–71) and Darling, Youthful Offenders and Neglected Children Under the D.C.Crime Act, *Id.* at 373–431.

1. D.C.Code 1967, § 16–2306 (Supp. IV, 1971).

2. *Id.* § 16–2304, § 16–2308.

3. *Id.* § 16–2312(e).

4. *Id.* § 16–2312(j).

5. *Id.* § 16–2316(a).

6. *Id.* § 16–2316(b).

7. *Id.* § 16–2316(d).

tation and to cross-examine witnesses.[8] The testimony of witnesses is taken orally under oath or affirmation.[9]

Although the general public is excluded from juvenile hearings, in order to help preserve the anonymity of the child " . . . the Division may, pursuant to rule of the Superior Court, admit such other persons (including members of the press) as have a proper interest in the case or the work of the court on condition that they refrain from divulging information identifying the child or members of his family involved in the proceedings".[10] The adjudications are not criminal and do not impose civil disabilities.[11]

A child is identified only by initials in all court records and all steps are to be taken to protect the identity of the child.[12] The Code also requires that juvenile case records be kept confidential and that they not be open to inspection subject to certain authorized exceptions such as judges and professional staff of the Superior Court, the Corporation Counsel, the United States Attorney, the respondent, his parents or guardians and their duly authorized attorneys.[13]

Delinquency must be proved beyond a reasonable doubt,[14] all hearings are recorded[15] and when the fact-finding has been completed, the judge is required to file written findings as to the truth of the allegations in the petition.[16]

---

8. D.C.Super.Ct.Juv. Rule 26 which is substantially similar to Fed.R.Crim.P. 26 except for the following, "[u]nder oath or affirmation" has been substituted for "in open court" in the first sentence.

9. *Id.*

10. D.C.Code 1967, § 16–2316(c) (Supp. IV, 1971).

