**UNITED STATES of America**

v.

**Vincent FLETCHER.**

**Crim. No. 84–00170.**

United States District Court,
E.D. Pennsylvania.

Feb. 1, 1985.

---

Edward S.G. Dennis, Jr., U.S. Atty., Amy L. Kurland, Asst. U.S. Atty., Philadelphia, Pa., for plaintiff.

Willis W. Berry, Jr., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

DITTER, District Judge.

On June 1, 1983, defendant was indicted for various drug-related offenses. After extensive pre-trial proceedings, and on the eve of trial, this indictment was withdrawn by the government. On April 16, 1984, defendant was reindicted for essentially the same conduct alleged in the prior indictment. On April 17, 1984, defendant, with counsel, appeared before Magistrate Hall and was released on $25,000 unsecured bond. Trial commenced on May 18, 1984, and on May 23, 1984, the jury returned a guilty verdict on five counts and a not guilty verdict on one count. Presently before me is defendant's motion for a new trial or arrest of judgment.

Defendant first contends a new trial is warranted because evidence of other offenses was allowed. While counsel has not cited any specific incident, I have reviewed the record and found two occasions where the word "cocaine" was mentioned. In both instances the government's paid informant was explaining his conversations with the defendant, conversations which were tape recorded, admitted into evidence, and played to the jury. Because these conversations were in coded language, the testimony, which in essence explained that certain words were intended to refer to cocaine, was necessary to explain what was being said. Furthermore, this testimony was necessary to put the taped conversa-

tions into perspective. *See* T.R. 334–36. For these reasons, I concluded the probative value of the testimony far outweighed any prejudice to the defendant. There was no error.

■ ´ Defendant next asserts that jury selection was "impeded" because his counsel was not allowed to ask proper questions. Defendant has not enumerated those questions he was not allowed to ask but I recall much being made of my refusal to question prospective jurors as to "whether or not they would necessarily believe the testimony of a police officer or FBI agent simply because he is a police officer or FBI agent." T.R. 83. I rejected the question because it is manifest nonsense to ask people how they will react to undescribed testimony about unstated matters in an unknown context given in an undisclosed way by a vague category of unseen witnesses.[1]

The question is akin to the equally unanswerable query: would you believe the testimony of a policeman over that of someone who is not a policeman? Again, it is meaningless to ask prospective jurors to speculate as to how they would compare a vague something (all policemen, most policemen, or a specific policeman, no matter what is said) to an unknown nothing (everyone else, no matter who they are or what they say) where the only limit is the breadth of the veniremen's imagination.[2] For example, a thoughtful venireman in contemplating a response might canvas the entire universe of all "nonpolicemen." In so doing he would surely think of someone he would believe more than some unknown, unseen policeman: a priest, parent, or paragon. Conversely, an equally thoughtful venireman, in contemplating his response, might not think of those he trusts most, but those he trusts least, a punk, perjurer, or procurer. Both potential jurors may possess the same objectivity or prejudice, but because of the overgenerality of the question and the concomitant divergence in comparisons, each may give a different response.´

Moreover, as I fully explained to counsel at the time I refused to engage in voir dire on this issue, the context of testimony is critical. The weight to be given any witness cannot, and should not, be preordained until he has testified and the jurors have had a chance not only to observe him but to compare his testimony to all the other evidence. It is this very principle which prompts trial judges to instruct jurors not to make decisions, including decisions as to credibility, until they hear all the evidence, the arguments of counsel, and the court's instructions as to the law. In fact, such an instruction was given in this case at the request of defense counsel. T.R. 187–90.

Not surprisingly, courts have held it not to be an abuse of discretion to refuse to question prospective jurors about the weight they will give the testimony of a law enforcement officer, as opposed to the testimony of an ordinary citizen. *United States v. Vadino*, 680 F.2d 1329, 1336–37 (11th Cir.1982) (citing *United States v. Jackson*, 448 F.2d 539, 542–43 (5th Cir. 1971), *cert. denied*, 404 U.S. 1063, 92 S.Ct. 750, 30 L.Ed.2d 775 (1972)), *cert. denied*, 460 U.S. 1082, 103 S.Ct. 1771, 76 L.Ed.2d 344 (1983); *United States v. Gassaway*, 456 F.2d 624, 625–26 (5th Cir.1972); *Ross v. United States*, 374 F.2d 97, 104–06 (8th

---

1. It has been held that it is not error to refuse to ask verniremen hypothetical questions when the purpose is to have the jurors state in advance what their decisions will be under a certain state of the evidence. *Commonwealth v. Moon*, 389 Pa. 304, 132 A.2d 224, *cert. dismissed* 355 U.S. 908, 78 S.Ct. 335, 2 L.Ed.2d 270 (1957). However, I did say I would ask the prospective jurors a rephrased version of counsel's proposed question, but he refused my offer. T.R. 85–86.

2. The question I did ask was:

Would any of you be more apt to believe a witness just because he or she testifies on behalf of the Government than if that same witness testified on behalf of the defense? And, conversely, would any of you be more apt to believe a witness just because he or she testified on behalf of the defense than if that same person was to testify on behalf of the Government? The question simply is, would you be more apt to believe a person depending on which side happened to call that witness to testify?

T.R. 79.

Cir.1967). This is not to say, however, that there is unanimous agreement on the point, and the desirability of asking a question like that requested by counsel has been acknowledged, *albeit* without analysis, by a jurist no less than the Honorable Warren E. Burger when he was a court of appeals judge. *See Brown v. United States,* 338 F.2d 543 (D.C.Cir.1964). However, even under the standard used in *Brown,* a new trial is not warranted in this case because the most incriminating evidence came, not from police officers, but from wiretaps and the testimony of an informant whose credibility was fully explored on cross-examination. *See id.* at 545 ("The issue turns on the degree of impact which the testimony in question would be likely to have had on the jury and what part such testimony played in the case as a whole."). My refusal to ask the question as phrased by defense counsel was entirely proper.

■ Defendant's third ground for a new trial contends he was not allowed to present his case to the jury. While counsel has not explained what he means by this assertion, I assume he is challenging my refusal to continue the trial for a week to afford defendant additional time to procure the presence of three witnesses. This is what occurred. Certain incriminating evidence had been found in the attic of the building where the defendant lived. Defendant introduced evidence to show that the room in question was occupied by another man and that he, the defendant, lived on the third floor of the building. At approximately 12:15 on the fourth day of trial, Tuesday, May 22, 1984, defense counsel asked that we recess for lunch so that defendant's state parole officer, John Lonergan, could be afforded an opportunity to testify he visited defendant on the third floor, not the attic where the evidence was found. Lonergan had not been subpoenaed and defense counsel explained that his client "claims he may be able to get ahold of him during the lunch break maybe and get him down here." T.R. 544. I granted

defense counsel's request and court was recessed until 1:30 p.m.

When court resumed, defense counsel said for the first time he also wanted an opportunity to subpoena Bell Telephone Company records which would show the defendant's address to be on the third floor of the building. I refused a recess for that purpose [3] but said we would wait another half hour for Lonergan.

At 2:08 when court resumed, Lonergan had not appeared but another half hour was used in ruling on defense counsel's points for charge. Significantly, defense counsel, at this point, confirmed he had not interviewed Lonergan and did not know what he would say, except for what the defendant had told him, that is, Lonergan had visited defendant on the third floor. T.R. 564. As to this fact, however, the government was willing to stipulate. T.R. 557–58. There was no indication that Mr. Lonergan would testify that the third floor apartment was the defendant's residence, and this was the testimony defendant really wanted. *See id.*

At this time defense counsel stated he also wanted to call Tracey Caldwell, the wife of a government witness, who would "hopefully" impeach his credibility. T.R. 558. Counsel admitted he personally did not have the "slightest idea" of what she would say, having never talked with her and having never subpoenaed her. Counsel's only information had come to him "indirectly." The defendant had never talked to Mrs. Caldwell either. T.R. 561. However, the FBI had interviewed Mrs. Caldwell and the assistant United States attorney stated that Mrs. Caldwell would not testify in the manner the defendant had suggested. T.R. 559. At that point, we had waited, at defense counsel's request, for more than two hours. Defense counsel asked that the trial be continued until the following Monday. T.R. 559. I refused to do so.

Where a continuance has been requested to afford an opportunity to interview and

---

**3.** This ground for a continuance was subsequently rendered moot by the government's agreement to stipulate to this testimony. T.R. 557 & 566.

subpoena potential witnesses, the following general rule has been stated:

> A movant must show that due diligence has been exercised to obtain the attendance of the witness, that substantial favorable testimony would be tendered by the witness, that the witness is available and willing to testify, and that the denial of a continuance would materially prejudice the defendant.

*United States v. Uptain,* 531 F.2d 1281, 1287 (5th Cir.1976). Based on those standards, it is obvious that the continuance was not warranted. There was no showing of due diligence, no showing that there would be favorable testimony tendered by a witness, and no showing that the denial of the continuance would materially prejudice the defendant. My refusal of defendant's request for a week's continuance was entirely proper.

■ Defendant's fourth assertion of error challenges the admission of wiretaps into evidence. A specific reason for the nonadmissibility is not cited, and I remain convinced that my original decision to admit these wiretaps was correct. T.R. at 11–19. *See, e.g., United States v. Baynes,* 400 F.Supp. 285 (E.D.Pa.), *aff'd,* 517 F.2d 1399 (3d Cir.1975). Absent a more specific objection by defendant, I am unable to elaborate further on this point.

■ Defendant next assigns error to my permitting the jury to use transcripts of wiretaps and consent recordings. However, each time transcripts were used I gave the proper cautionary instruction. *See, e.g.,* T.R. 243–45. In addition, the transcripts were collected whenever the tape recordings were not being played. *See, e.g.,* T.R. 254. Finally, while there was initially some disagreement concerning the accuracy of certain parts of transcripts, T.R. 46–47; 204–06, defense counsel eventually prevailed in having the transcripts changed to reflect his version of the tape recorded conversations. T.R. 230–41. For these reasons there was no error in the use of transcripts. *See United States v. Bryant,* 480 F.2d 785 (2d Cir.1973); *United States v. Lawson,* 347 F.Supp. 144, 148–50 (E.D.Pa.1972).

■ Next, defendant asserts it was error to permit Agent Hershowitz "to give his opinion to the jury." It appears defendant is challenging the admission of the agent's opinion as to the coded language obtained by the wiretaps. However, because Agent Hershowitz was qualified as an expert on drug terminology, T.R. 207–20, admission of his opinion was entirely proper. *See United States v. Smith,* 519 F.2d 516 (9th Cir.1975).

■ Defendant's seventh ground for a new trial is based on my refusal to give three of his requested points for charge. However, for the reasons that appear on the record, these points were properly refused. *See* T.R. 548–57. As to instruction 1710, a fourth instruction, the propriety of which was discussed, I deferred ruling and defense counsel never renewed his request T.R. 552. However, even if defendant had pressed the issue, I would have refused the instruction because there was no evidence of record addressing the "general reputation of the witness[es] for truth and veracity ... in the community where the witness now resides." *See Id.*

Finally, defendant asserts the verdict was contrary to law. I am, however, firmly convinced the verdict was entirely proper.

For all the above reasons, defendant's motion for arrest of judgment or in lieu thereof to grant a new trial must be denied.