UNITED STATES of America, Plaintiff-
Appellee,

v.

Irving NAPUE, Defendant-Appellant.
No. 16106.

United States Court of Appeals
Seventh Circuit.

Sept. 6, 1968.

Rehearing Denied En Banc Oct. 14, 1968.
Certiorari Denied Jan. 13, 1969.

See 89 S.Ct. 634.

R. Eugene Pincham, Earl E. Strayhorn, Charles B. Evins, Chicago, Ill., for defendant-appellant.

Thomas A. Foran, U. S. Atty., Lawrence J. Cohen, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee; John Peter Lulinski, Gerald M. Werksman, Chicago, Ill., of counsel.

Before KNOCH, Senior Circuit Judge, and SWYGERT and CUMMINGS, Circuit Judges.

KNOCH, Senior Circuit Judge.

The defendant-appellant, Irving Napue, was tried on an indictment charging, in Count I, an unlawful sale of narcotics to Donald W. Tucker, and, in Count II, an unlawful concealment of narcotics in violation of Title 26 U.S.C. § 4705(a) and Title 21 U.S.C. § 174. A third count charging violation of Title 21 U.S.C. § 174 was dismissed on motion of the United States prior to trial.

The defendant's motion for acquittal on the sale count was granted by the Trial Judge. The jury found the defendant guilty under the concealment count. Defendant was sentenced to serve six years' imprisonment.

The defendant has appealed his conviction asserting as reversible errors the following:

1. The Court refused to instruct the jury on the defendant's theory of the case.

2. The Court refused to order the prosecution to determine whether government witnesses had testified before the Grand Jury and to order production of the transcript of any such testimony, if available, for defense counsel's use in cross-examination.

3. The Court instructed the jury respecting the defendant's prior criminal conviction.

4. The Court refused to dismiss the indictment for delay in bringing charges or to hold a hearing on the reasonableness of such delay and its possible prejudice to the defendant.

5. The Court denied a motion for bill of particulars respecting the time and place of commission of the offense, which defendant argues was necessary to minimize the prejudicial effect of the delay in bringing charges.

I.

Special Agent Donald W. Tucker of the United States Secret Service testified that in December 1964 he was employed as a narcotic agent for the Federal Bureau of Narcotics. He said that on December 7, 1964, after a conference with other agents William Reibel and Robert Defauw, from whom he received $400 of officially advanced funds, he visited the home of an informant, Cathy Bullock, where he listened on an extension to a telephone call she made to Mildred Howell, whose voice he recognized, that he and Miss Bullock then met Agents Reibel and Defauw and a Chicago policewoman at 76th and Wentworth Avenue, in Chicago, Illinois, after which they drove to the vicinity of 84th Street and St. Lawrence Avenue, where, at about 8:00 P.M., Mildred Howell came up to his vehicle and had a conversation with him, whereupon all three entered the basement of Mildred Howell's residence at 8352 S. St. Lawrence Avenue. Mildred Howell left them but at about 8:30 P.M. Agent Tucker heard the front door bell, and Mildred Howell came down. He gave her $375 of the $400 he had previously received, and when he heard her footsteps going toward the front of the house, he went up a flight of stairs, looked around and out of the half open door at the head of those stairs into the front hall which was "kind of lighted up" although the rear of the house was in darkness, and observed in profile Mrs. Howell and the defendant who were standing facing each other. He saw her hand the defendant a quantity of money and heard her ask, "Is the stuff good?" to which the defendant re-

plied, "Yes, it is good. You can tell whoever is getting it they are going to be pleased with it." Defendant then handed Mrs. Howell a plastic bag which appeared to contain a white powder. As Mrs. Howell walked toward the basement door, Agent Tucker returned to the basement where she joined him in 5 or 10 seconds and handed him a plastic bag containing white powder. Miss Bullock and he returned to 76th and Wentworth where he gave the plastic bag to Agent Defauw whom he saw perform a Marquis Reagent Field Test on some of the powder. A positive reaction was noted indicating the presence of an opiate.

Federal Narcotics Agent Robert Defauw testified that after the conference with Agents Reibel and Tucker, he and Agent Reibel, who was driving, went to 75th and S. Wentworth where he saw Agent Tucker park his vehicle and enter Miss Bullock's residence and at about 7:15 P.M. saw both leave for 76th and S. Wentworth where he met them. He then followed them to 84th and St. Lawrence, saw Agent Tucker's vehicle parked and maintained surveillance. At about 8:00 P.M. he saw Mildred Howell approach the car and then saw all three walk toward St. Lawrence. He followed on foot till they came alongside the house at 8352 St. Lawrence and then returned to his vehicle. At about 8:25 P.M. he saw a black livery cab (whose make and license number he did not observe) double park in front of 8352 St. Lawrence and the defendant leave the cab to enter 8352 St. Lawrence. Defendant stresses the fact that Agent Defauw was three or four car lengths north of the house with other automobiles parked on the street, it was dark and cold with snow on the ground. Agent Defauw testified that there was a light on the porch. Five minutes later Agent Defauw saw the defendant leave 8352 St. Lawrence and return to the cab. He followed it to 84th and S. Ellis, saw the defendant leave the cab and enter what he thought was 8352 S. Ellis, an apartment building. Again defendant points out that Agent Defauw was three or four car lengths

behind with other automobiles on the street between him and the livery cab. After that Agent Defauw went back to 8352 St. Lawrence where he saw Agent Tucker and Miss Bullock leave the Howell residence, and get into Agent Tucker's car. He followed them to 76th and S. Wentworth where he received a plastic bag from Agent Tucker, performed a Marquis Reagent Field Test with a positive reaction.

Federal Narcotics Agent Vernon D. Meyer testified that about 8:00 P.M. on December 7, 1964, he was in the 8300 block of S. Ellis in a radio car in communication with Agent Defauw.

At about 8:20 he saw defendant come out of the apartment building at 8352 S. Ellis, about ten car lengths away, and enter a black livery taxicab, the make and license number of which he did not know. He said that he thought it was a Dodge or Plymouth. The defendant argues that had these agents noted the license it would have been simple to check with the company and to ascertain who had hired the cab and possibly to secure the driver as a witness who would have had a better opportunity to identify his passenger than the three agents who saw the man for such short periods of time. Agent Meyer said he saw the cab go to 8352 S. St. Lawrence, saw the defendant leave it and enter the building. He waited about five minutes, saw defendant come out, return to the cab and go back to 8352 S. Ellis, where Agent Meyer remained conducting surveillance till he received a radio communication.

The defendant testified that he did not recall where he was on December 7, 1964, but that he did know he had not been in Mrs. Howell's home on that day, that he had never been there, that he had neither given her a plastic bag nor taken any money from her, that he had never been on St. Lawrence Avenue in or out of a cab, that he first learned at the trial that he was alleged to have been in the Howell home on December 7, 1964, that he could not recall having known Mrs. Howell prior to that date although he knew her husband and had met her a

year or possibly two prior to the trial which was held in November, 1966. He said further that he first heard of Miss Bullock after he was arrested, that he had not sold narcotics to Agent Tucker or to anyone else on December 7, 1964. He offered to submit to any tests to prove he was telling the truth. He had been working at a grill and bar for two years, prior to which he had worked at Republic Steel and at a bicycle firm. He did not remember where he was arrested. He had lived at 860 Hudson Street for almost a year and prior to that at 8352 S. Ellis, where he was living in December 1964.

The defendant tendered two instructions reading as follows:

> The court instructs the jury that the identity of the defendant must be proved beyond all reasonable doubt. And you are instructed that so far as the identity of the defendant is concerned that if you believe from the evidence and the circumstances proved that there is a reasonable doubt whether the prosecuting witnesses might not be mistaken as to the identity of the defendant, then the jury would not be authorized to convict the defendant.

> In determining whether or not the witnesses, who testified that they recognized the defendant as being the same person who committed the offense might or might not be mistaken in their identification of him, the jury have a right to, and should take into consideration the lapse of time intervening between the date of the commission of the crime charged and the occasion and circumstances under which the witnesses saw the defendant after his arrest, together with the circumstances under which the witnesses saw him on that occasion and from all the circumstances in evidence, it is for the jury to determine whether or not said witness or witnesses are mistaken.

The Trial Judge refused to give these instructions on the ground that they were argumentative instructions, that, of course, counsel could argue these questions to the jury, but that this went to the whole crux of the case: whether the officers did or did not see this defendant at the time in question, but that he was not going to take one piece of evidence in the case and single that out for particular attention. He did not review, summarize or comment on the evidence.

Defense counsel argued the theory of mistaken identity at great length to the jury. The government also referred to both issues: mistaken identity and credibility of the witnesses, also emphasizing the question of identification.

Defendant contends that the jury was never advised of the defendant's theory of the case, relying on Salley v. United States, 1965, 122 U.S.App.D.C. 359, 353 F.2d 897, 898. There the Trial Court instructed the jury that the government must prove beyond a reasonable doubt that the defendant had committed every element of the offense with which he was charged and then referred to the specific facts of the case as follows:

> If you find by proof beyond a reasonable doubt that the defendant sold the drug involved in this case to Officer Brooks on September 3rd, and the other elements of the offenses are proven beyond a reasonable doubt, you may find the defendant guilty. If, however, you find that the defendant did not make the sale, of course, you will find the defendant not guilty on each count. And if you have a reasonable doubt as to whether the defendant did or did not make the sale, you will also find the defendant not guilty.

adding:

> [D]efendant denies that he made any such sale and takes the position that if Officer Brooks did buy these six capsules on September 3rd, he must have bought it [sic] from someone else.

> \* \* \*

The defense sought to have the jury instructed:

> "You are instructed that the identity of the defendant as the person who committed the crime is an element of every crime. Therefore, the burden is

on the Government to prove beyond a reasonable doubt not only that the crime alleged was committed, but also that the defendant was the one who committed it.

" * * * You must be satisfied beyond a reasonable doubt of the accuracy of the witness' identification of the defendant.

"In this regard, you are instructed that it is not necessary for the defendant to prove that another person may have committed the crime, nor is the burden on the defendant to prove his innocence. If facts and circumstances have been introduced into evidence which raise a reasonable doubt as to whether the defendant was the person who committed the crime charged, then you should find the defendant not guilty of the offense."

The D.C. Circuit referred to the particular dangers raised by the local practice (to which we refer below) of having one undercover agent file for as many as 100 warrants after a tour of duty lasting for a number of months and the obvious possibility of error due to mistake or fallibility of human memory of an agent who meets many people buying from some and not from others, so that a requested instruction bringing the defense of mistaken identity to the jury's attention in a narcotics case must be given, though not necessarily in the words requested by counsel.

The Court went on to note that some jurors may have drawn the conclusion that their primary task was to determine whether Officer Brooks was mistaken in his identification, but that the matter was too important to be left to speculation. The Court's view on this point may have been to a degree influenced by the numerous other grounds which were not discussed at any length but which the Court held would independently require reversal. One such ground which is mentioned was the Trial Court's unreasonable failure on request to ask on voir dire whether any of the jurors were inclined to give more weight to the testi-

mony of a police officer merely because he was a police officer than any other witness in the case (which had been held reversible error in Sellers v. United States, 1959, 106 U.S.App.D.C. 209, 271 F.2d 475, 476, 477; Brown v. United States, 1964, 119 U.S.App.D.C. 203, 338 F.2d 543, 544).

The circumstances which gave such concern to the D.C. Circuit do not exist here. There were three identifying officers, not merely one. Nothing suggests that identification was complicated by multiple unrelated narcotics purchases. The agents here were obviously expecting this defendant. An agent in one government vehicle in radio communication with the others was waiting near the defendant's home. Continuing interest was maintained in defendant. The record shows a reference to the defendant's having seen Agent Defauw on September 15, 1965.

In Salley, the Court relied on Levine v. United States, 1958, 104 U.S.App.D.C. 281, 261 F.2d 747, 748, for the principle that the Trial Court may not refuse to instruct on the defendant's theory of the case. The Court there said (at page 749) that the jury should not have been influenced by the Court's charge to concentrate unduly upon one side of the conflicting evidence as to whom defendant represented himself to be. The defendant, an attorney, was charged with representing himself to be a police officer when interviewing the prosecuting witness. He testified that he represented himself accurately to be an attorney for one of the defendants and an officer of the Court whose duty it was to find out what happened so that he could protect his client. The D.C. Circuit held it was error to deny a more balanced charge when the request had the support of substantial evidence.

This Court also reversed a conviction on the ground of an unfairly balanced comment on the evidence in United States v. Dichiarinte, 7 Cir., 1967, 385 F.2d 333. The defense argued that the agents were mistaken but the government contended that the main issue was credibility. In

the course of argument the government counsel asserted that somewhere there was perjury (although the defense had not charged the agents with dishonesty), and intimated that the defense charged the agents with framing the defendants, that witnesses on one side or the other must be lying, and that the agents would have no reason to lie.

Judge Fairchild speaking for this Court said that the Trial Court in its instructions seemingly adopted the prosecution's position that either the agents or the defense witnesses lied without balancing that comment by a reminder that the jury were free to consider the defense theory of mistake.

■ We are inclined to think that some instruction (not necessarily in the form offered by the defense) on mistaken identity would have been the better practice here, but we find its omission in the circumstances of this case to be mere harmless error. As in United States v. DeSisto, 2 Cir., 1964, 329 F.2d 929, 934, cert. den. 377 U.S. 979, 84 S.Ct. 1885, 12 L.Ed.2d 747, the issue of mistaken identity was clearly made in the course of examination as to the circumstances under which the three agents saw the man they identified as the defendant and was thoroughly argued in the summation to the jury who could not possibly have been misled.

## II.

None of the three government agent witnesses were able to state positively on cross-examination that they had not testified before the Grand Jury which returned the indictment on which this case was tried. Agent Tucker did not think he had testified before any Grand Jury about these matters but did not specifically state he had not done so. Although government counsel advised the Court that he could ascertain by examining the Grand Jury minutes whether these agents had testified, the Court declined to order him to make that check.

■ No particularized need for such testimony was shown. This trial was held prior to this Court's ruling (to be solely prospective in effect) in United States v. Amabile, 7 Cir., 1968, 395 F.2d 47, that in the future the defense might have access to a witness's Grand Jury testimony on the subjects about which he testified unless the government could show that access should be denied. In Amabile, Judge Cummings speaking for this Court carefully distinguished Dennis v. United States, 1966, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973, on which defendant here relies, where counsel for the defense did show a particularized need, where the prosecution used the Grand Jury transcript at the trial, where there was a seven-year time lag between the Grand Jury and the trial testimony, and the Court was trying charges of a complex conspiracy fifteen years after the fact, involving largely uncorroborated testimony of two accomplices, one a paid informant, a possibly hostile witness and one who on cross-examination admitted prior mistakes about significant dates.

The defendant here made no timely request for the Grand Jury testimony while Agent Tucker or Agent Meyer were on the stand, but only when Agent Defauw was testifying. The government argues with reason that the motion was untimely as to the first two. National Dairy Products Corp. v. United States, 8 Cir., 1967, 384 F.2d 457, cert. den. 390 U.S. 957, 88 S.Ct. 1032, 19 L.Ed. 2d 1151.

The Trial Judge asked government counsel whether he had in his files any Grand Jury minutes or transcript relating to the testimony of any of the agents and was answered in the negative. Counsel said he did not know if any had testified before the Grand Jury, but that the case was initially handled by another attorney.

Pursuant to order of this Court, government counsel checked the records on file in the United States Attorney's office and reported that they disclosed the following: Agent Donald W. Tucker was the sole witness in June 1965 before the Grand Jury which returned the initial indictment (referred to below) and

Agent William W. Raebel was the only witness before the January 1966 Grand Jury which returned the indictment on which this case was tried, however no reporter was present on either occasion and no transcript of the testimony exists.

### III.

■ The Court instructed the jury:

The testimony of a witness may be discredited or impeached by showing that he had been convicted of a felony. Prior conviction does not render a witness incompetent to testify, however it may reflect on his credibility. It is the province of the jury to determine what weight, if any, should be given to such prior conviction as impeachment.

In the course of direct examination defendant testified that in making an application for employment at the U. S. Post Office he had answered "no" to an inquiry as to whether he had ever been arrested, believing, he explained, that "arrest" included conviction and he had never been sent to jail although he had been arrested, that this statement was the subject of a. charge in the Federal Court and that he had been placed on probation. On cross-examination defendant said that he was placed on probation for two years and that this must have been ten years ago. In framing his questions government counsel referred to a specific case by number, date and disposition, and the defendant agreed with some of his statement, particularly as to the two years' probation, but said he did not remember anything else clearly. No further testimony was adduced from defendant as to the specific charge, but the Trial Judge obviously took judicial notice of the Court records. See United States v. Austrew, D.C., Md., 1962, 202 F.Supp. 816, 821, affd. 5 Cir., 1963, 317 F.2d 926, cited with approval in Chandler v. United States, 9 Cir., 1967, 378 F.2d 906, 909.

Making a known false statement of a material fact is a felony under Title 18 U.S.C. § 1001. A conviction for making a false statement surely has probative value on the issue of credibility. Luck v. United States, 1965, 121 U.S.App.D.C. 151, 348 F.2d 763, 769, on which defendant relies, holds that suppression of a prior conviction is a matter for the exercise of sound discretion. No prior motion to suppress the conviction was made as in Brown v. United States, D.C. Cir., 1966, 370 F.2d 242. Defendant himself initially raised the prior offense.

### IV.

The defendant was arrested by agents of the Federal Bureau of Narcotics on March 30, 1965, taken before a United States Commissioner the same day on a complaint for examination alleging a sale of narcotics to Donald W. Tucker on December 7, 1964. Defendant waived preliminary hearing.

On June 17, 1965, an indictment in two counts was returned and a bench warrant issued for defendant's arrest. The defendant moved to dismiss that indictment arguing then, as he did later on appeal here, that needless and unreasonable delay between the date of the offenses, December 7, 1964, and the arrest on March 30, 1965, and the further delay between the defendant's holdover to the Grand Jury and the return of the indictment on June 17, 1965, in derogation of Rule 48 of the Federal Rules of Criminal Procedure [1] hampered preparation of any defense by precluding his recall of his whereabouts and activities on December 7, 1964, and his location of any possible witnesses, while the government was in no way adversely affected because its agents would have made contemporary memoranda of the events from which they could testify. He stated that he had resided at the same address continuously and could have been arrested at any time. Defendant requested a hear-

---

[1]. Rule 48. Dismissal * * * (b) By Court. If there is unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant who has been held to answer to the district court, or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information or complaint.

ing. No hearing was held. The Trial Judge denied the motion indicating that he thought Ross v. United States, 1965, 121 U.S.App.D.C. 233, 349 F.2d 210 was inapplicable and that prejudice had not resulted from the delays which had occurred here.

In Ross, the Court was concerned about a pattern of cases and its supervisory responsibility for criminal proceedings involving the District of Columbia Metropolitan Police force. In Ross the complaint was sworn out seven months after the alleged offense and the D.C. Circuit thought the Trial Court's finding of "requirements of effective law-enforcement" an inadequate justification for a deliberate and purposeful delay of seven months. This delay in filing complaint was occasioned by police reluctance to terminate the usefulness of a particular undercover agent by untimely disclosure of his identity. The D.C. Circuit considered it essential to strike a balance in police work to avoid the complete sacrifice of one or another impinging interests. In a footnote to the opinion (at page 213) the Court referred to numerous sales made to the same undercover agent during the last three months of his work with the implication that three months was clearly not an unreasonable delay, but added:

> Whatever the outer limits of such a period may be, the point is that, being purposeful, the delay should result only from arrangements which reflect a conscious effort to accommodate fairness and efficiency.

On January 25, 1966, the original indictment of June 17, 1965, was superseded by the three-count indictment on which the defendant was tried. The first two counts were similar to those of the initial indictment. Defendant's motions to the first indictment were allowed to stand as motions to the second.

In his suggestions in support of his motion to dismiss, the defendant denied any knowledge of the crime, asserted his innocence, protesting his lack of recollection and inability to find any witnesses.

He also said on information and belief that although he kept no diary, the government witnesses did have memoranda without which they would also be unable to testify to the events of December 7, 1964. He indicated later in his objections to consolidation of his case with that of Mildred Howell that he intended to call her as a witness at his trial.

 We do not agree that the Trial Judge abused his discretion in waiting to appraise the reasonableness of the delay in the light of what would be disclosed at and after the trial. The defendant renewed his motion after trial. The Trial Judge was then in an excellent position to make his determination. The investigation had begun on December 3, 1964 and had been consistently continued thereafter. The identity of not only the undercover agent, but also that of the informant, required protection. When the informant was murdered, the need for protection terminated, and the defendant was arrested.

Unlike Ross where the Court's concern was aroused because:

> The recurring spectacle of convictions based solely upon the testimony of a police witness who, by reason of lapse of time, could not testify on the basis of unaided personal recollection, began to implant doubts as to the propriety of permitting the reasonableness of the delay, in this very narrow and specialized class of narcotics cases, to be "controlled *exclusively* by the applicable statute of limitations." (The Court's emphasis; from page 215 of the opinion)

In the case before us, there were three agents who positively identified the defendant, none of whom testified from notes.

 This Court has taken the position that it is possible to conceive of a delay less than the period of the statute of limitations that is so unreasonable and so seriously prejudicial to the defendant that relief must be afforded under the Fifth Amendment due process provisions. United States v. Deloney, 7 Cir., 1968,

389 F.2d 324, rehrg. den., cert. den. 391 U.S. 904, 88 S.Ct. 1652, 20 L.Ed.2d 417. As Senior Circuit Judge Duffy said there (at pages 325–326):

It is apparent that some pre-indictment delay usually is necessary to the effective prosecution of certain crimes such as counterfeiting or narcotic offenses. In such cases, there is a great necessity, in the public interest, to use under-cover agents and informers in order to reach the source of the contraband. Some delay is inevitable.

In Deloney the pre-indictment delay was six months. In United States v. Panczko, 7 Cir., 1966, 367 F.2d 737, cert. den. 385 U.S. 1009, 87 S.Ct. 716, 17 L.Ed.2d 546, rehrg. den. 385 U.S. 1043, 87 S.Ct. 771, 17 L.Ed.2d 688, a pre-indictment delay of fourteen months, and in United States v. Evans, 7 Cir., 1967, 385 F.2d 824, 826, of ten and one-half months, were held to be reasonable. In Evans, the Court noted that the defendant (like the defendant here) claimed to have no recollection of what occurred on the date of the offense but denied ever having seen the agent-buyer.

 As to post arrest delays, totalling some eleven weeks, we find no abuse of discretion in the Trial Court's holding these to be reasonable. The prosecutor is entitled to a reasonable time to investigate to determine whether prosecution is warranted and to prepare his submission to a grand jury. See Crow v. United States, 8 Cir., 1963, 323 F.2d 888, 890–891, where nine and one-half months were held reasonable. We do not believe that the time lapses in this case show any lack of diligence in the prosecution of the case.

## V.

█ At the time defendant sought to dismiss the indictment on the basis of delay in arrest, he also sought a bill of particulars concerning the exact location in Chicago of the alleged sale to Donald Tucker, the hour of the day on December 7, 1964, the names of those present and their last known addresses, the amount of payment, if any, those present at the receipt of such payment and their last known addresses, all referring specifically to Count I. We agree with the government's assertion that most of the items suggest that defendant was seeking to ascertain the nature of the government's evidence rather than the nature of the charge.

But defendant was convicted on Count II, not on Count I. Although defendant's motion for acquittal on Count I was allowed, he contends he was nevertheless prejudiced by denial of his motion, arguing that he was misled by the charge that he sold narcotics to Donald Tucker when the evidence ultimately showed that Mildred Howell had actually sold to Donald Tucker narcotics allegedly provided her by the defendant. However, as the government points out, long before trial, defendant indicated in his objections to consolidation that he proposed to call Mildred Howell as a witness, and the government in its answer to those objections disclosed that the proof against the two would be substantially identical.

After careful consideration of all points raised and argued and close scrutiny of all the authorities brought to our attention, we conclude that the defendant received a fair trial and that no prejudicial error appears in the record before us. The judgment of the District Court must be affirmed.

Affirmed.

SWYGERT, Circuit Judge (dissenting).

I dissent for two reasons. First, I believe that the district court erred in refusing to give, in substance at least, the requested identification instructions. In Salley v. United States, 122 U.S.App.D.C. 359, 353 F.2d 897 (1965), the court reversed the conviction of a defendant charged with a narcotics violation. One of the issues was whether the defendant was the perpetrator of the offense. The principal ground for reversal was the failure of the trial court to give an in-

struction on identification. There the court said:

> The widespread police practice of utilizing undercover agents and informers to infiltrate the narcotics underworld is effective and necessary. But it creates added danger that the innocent may be convicted. \* \* \* Often the only chance a defendant has to defend himself without accusing the officer of total fabrication is to raise in the jury's mind a reasonable doubt as to whether the defendant was, in fact, the seller. A requested instruction specifically bringing this defense of mistaken identity to the jury's attention in a narcotics case must be given. The trial judge was not obligated to give the charge in exactly the words requested by defense counsel. He was obligated to instruct the jury that if there was a reasonable doubt as to the identification of the defendant as the person who made the sale, then the jury should acquit. 353 F.2d at 898, 899.

I believe that the *Salley* decision lays down the correct rule of law. And contrary to the view of the majority, I think the respective factual situations in *Salley* and this case are sufficiently analogous to render the two cases legally indistinguishable. Moreover, this court in United States v. Dichiarinte, 385 F.2d 333 (7th Cir. 1967), inferentially recognized the need for an instruction of the kind that was refused in the instant case.

The Government attempts to excuse the district court's failure to instruct specifically on the identification issue by arguing in its brief:

> Having challenged only the identification evidence, defendant's strategy left but two arguments open to the parties: mistaken identity and credibility. While defendant proceeded to argue the mistaken identity theory over the course of nineteen transcript

pages, the Government not only referred to both theories during its closing argument, but also devoted the greater part of its reply to the theory of identification, concluding its discussion with the statement: "We rely upon these trained investigators that their identification of the defendant is clear and positive. \* \* \*"

In my opinion, summation of counsel at the close of the evidence, however explicit or prolonged, may not substitute for proper instructions to the jury by the court. The proposition advanced by the Government, carried to its logical conclusion, might be expanded so that if final argument by counsel were sufficiently pervasive, no instructions by the court would be needed at all.

The second reason for my dissent centers on the district court's failure to conduct a hearing on the defendant's motion to dismiss the indictment because of the delay in his arrest. The district court, prior to the trial, summarily denied the motion after refusing to conduct an evidentiary hearing, saying:

> First, the delay in indicting the defendant; and I don't think that the *Ross* case applies to the facts in this case, and I don't think that there was any prejudice by the delay that occurred here, and I also question the *Ross* case; and so, on all those grounds, that motion is denied \* \* the motion to dismiss is denied. \* \*

The majority excuses the district court's failure to conduct a hearing on this issue by saying, "We do not agree that the Trial Judge abused his discretion in waiting to appraise the reasonableness of the delay in the light of what would be disclosed at and after the trial." The motion to dismiss was renewed at the close of the trial, but the record fails to disclose that the district judge received any additional facts at that time.[1]

---

1. The record shows the following statement by the district judge with reference to the post-trial motions:

I have looked over the post-trial motions. It seems to me that all that the defendant has done in the post-trial mo-

tions is to raise the same issues that were previously argued and passed upon. I find nothing new in any of the post-trial motions that hasn't already been argued. On that basis, the post-trial motions are denied.

Although I do not believe that it was necessary to conduct an evidentiary hearing and to dispose of the defendant's motion to dismiss the indictment on the ground of prejudicial delay in bringing the charge prior to trial, I think that such a pre-trial hearing would be the most expeditious and desirable course to follow. A pre-trial hearing would eliminate the possibility of mingling other evidence with the evidence of delay, as occurred in this case. Such a procedure would allow the district court to focus on the delay issue alone. In addition, a pre-trial hearing, if the allegations of delay were proved, would eliminate the necessity of conducting a trial.

In United States v. Deloney, 389 F.2d 324, 325 (7th Cir. 1968), this court, after referring to our previous decision in United States v. Panczko, 367 F.2d 737, 738 (7th Cir. 1966), cert. denied, 385 U. S. 1009, 87 S.Ct. 716, 17 L.Ed.2d 546 (1967), in which we held that "the government is entitled to a reasonable time in which to investigate a case * * * and prepare it for prosecution, limited *only* by the statute of limitations," [2] stated:

> We think we should concede that it is possible to conceive of a delay less than the period of the Statute of Limitations that would be so unreasonable and the prejudice to defendant so great, that relief under the Fifth Amendment should be afforded.

Thus in *Deloney* we recognized the constitutional principle, as delineated in Nickens v. United States, 116 U.S.App. D.C. 338, 323 F.2d 808, 810 (1963), and

confirmed in Ross v. United States, 349 F.2d 210, 211 (D.C. Cir. 1965), that "due process may be denied when a formal charge is delayed for an unreasonably oppressive and unjustifiable time after the offense to the prejudice of the accused." Although the ratio decidendi in *Deloney* is somewhat obscure, we did say, referring to *Ross* and its progeny in the District of Columbia Circuit:

> We think we can distill from these decisions the rule that before that Court will dismiss an indictment because of pre-indictment delay, an accused must show he has been prejudiced by the delay. Then, the burden is on the Government to show the delay was the result of a valid police purpose. 389 F.2d at 325.

The question of a separate hearing on the issue of delay was not raised in the briefs in *Deloney* nor did this court *sua sponte* direct that a hearing be conducted. In *Ross* as well as in several cognate decisions, e. g., Woody v. United States, 125 U.S.App.D.C. 192, 370 F.2d 214 (1966); Lee v. United States, 368 F.2d 834 (D.C. Cir. 1966); and Godfrey v. United States, 123 U.S.App.D.C. 219, 358 F.2d 850 (1966), the cases were remanded to the district court for a hearing on the reasonableness and effect of the pre-indictment delay. I believe that a similar remand should be ordered in the instant case.

I would reverse and remand for a hearing on the motion to dismiss and, depending on the result of that hearing, a new trial.

2. Although I concurred in the opinion in United States v. Panczko, upon further reflection, I believe that our decision there was too restrictive. *Panczko* failed to leave open the possibility that due process may prevent measuring the timeliness of bringing charges against an accused by reference solely to the applicable statute of limitations.