**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Jackson Willie GANT, Defendant-Appellant.**

**No. 73-1287.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Sept. 14, 1973.

Decided Oct. 24, 1973.

---

J. Terry Wiggins, Asst. U. S. Atty. (James L. Treece, U. S. Atty., on the brief), for plaintiff-appellee.

A. Thomas Elliott, Jr., Denver, Colo., for defendant-appellant.

Before PHILLIPS, HILL and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

Defendant-appellant was charged in a four-count indictment, three counts of which described the distribution of cocaine and one count of which charged him with knowingly and intentionally possessing cocaine with intent to distrib-

ute it contrary to 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. On February 1, 1973 the jury convicted him on all four counts. The present appeal seeks reversal based on alleged trial errors plus alleged erroneous rulings on pretrial motions.

On the date of trial, January 30, 1973, the defendant filed an additional motion seeking a severance from that of his codefendant, Rebecca Doyle. The trial court denied this as being untimely. The motion for severance was renewed at the end of all of the evidence and again the judge denied it.

The main issue on this appeal arises from the refusal of the court to grant a severance or mistrial, the contention being that the testimony of Rebecca Doyle in her own defense was antagonistic to the position of appellant and highly prejudicial. Other alleged trial errors concern the court's rulings on the extent of the cross-examination of the defendant-appellant, the allowing of the attorney for the codefendant Doyle to ask leading questions and the failure of the trial court to limit the effect of the testimony of the codefendant in respect to the defendant-appellant. There are still other alleged errors, but these will not be considered here for they lack substance.

There were four different transactions in which I. H. Allen, Special Agent for the Bureau of Narcotics and Dangerous Drugs, paid Gant a total of approximately $7,100 ($1,100 in the first transaction; $1,000 in the second transaction; $5,000 in the third; and none in the fourth when the arrest took place). Previously he had flashed a roll of bills in the amount of $35,000 to one Richard Doyle in San Francisco in the expectation that this would be communicated to one "Jack."

During June 1972 Allen went to San Francisco and there met Richard Doyle for the purpose of purchasing a large quantity of cocaine. Although appellant was contemplated as the source of supply, Allen did not on that occasion deal with him. Subsequently, in September 1972, Richard Doyle contacted Allen concerning the purchase of cocaine and Doyle then arranged for him to meet defendant-appellant and Rebecca Doyle at Stapleton Airport in Denver. After that they all went to a hotel where the sale of cocaine was negotiated. The amount on that occasion was 51 grams, but Gant told Allen that he was capable of supplying larger quantities. Later in September there was another transaction at Stouffer's Inn near the airport in Denver, where 143 grams of cocaine were sold by Gant to Allen for the sum of $4,200. An additional $1,000 was paid to defendant as a final payment on the September 9 transaction. Then, on September 22, Rebecca Doyle brought approximately six ounces of cocaine to Denver for sale to Allen at the Stouffer's Inn. There she telephoned Gant in San Francisco to discuss the price, and Allen ultimately paid her $5,000.

A subsequent transaction occurred on October 3 at which time defendant-appellant and Rebecca Doyle again came to Denver. On this occasion they met in a hotel room and defendant-appellant undertook to teach Allen how to dilute the cocaine by mixing it with another substance. While this was going on the two defendants were arrested.

Defendant-appellant's position throughout the trial was that he had been induced to commit these offenses by the large amount of money which Allen had agreed to spend. Gant testified that he had never sold any cocaine before.

Defendant-appellant's codefendant, Rebecca Doyle, testified in her own behalf and said that she was a heroin addict and that defendant-appellant had supplied her with cocaine and heroin. She also said that she had been forced to engage in prostitution by the defendant-appellant in order to pay for the heroin and that he had forced her into participating in the sale of the cocaine involved in this case. Defendant-appellant also maintains that the lateness in raising the severance issue is not his fault—that the nature of Rebecca

Doyle's defense was not brought to his attention until the very day of the trial.

The court did consider the renewed motion for severance at the close of all of the evidence and in this light again denied it.

### I.

■ Defendant-appellant vigorously objects to the court's action in allowing Rebecca Doyle to testify that defendant-appellant had previously furnished her with heroin and had coerced her into prostitution and into the cocaine traffic by withholding heroin from her and by use of force. Although the relevancy of this testimony would have been questionable in the government's case, it assumed logical relevance after the defendant had testified to the effect that he had not previously sold cocaine or been involved with heroin. Rebecca Doyle's testimony would have been proper in rebuttal even if she had not been tried with appellant. *See* King v. United States, 402 F.2d 289 (10th Cir. 1968). Where such an issue is presented, collateral offenses can be shown to refute the evidence given. *See* Moran v. United States, 404 F.2d 663 (10th Cir. 1968). Moreover, predisposition to commit the crime charged in the information is relevant evidence when the accused has raised the defense of entrapment. *See* United States v. Abbadessa, 470 F.2d 1333 (10th Cir. 1972).

### II.

■ One further matter: the motion for severance was not filed until the day of the trial, that is, January 30, 1973. It recited that counsel for the appellant had not received the information until January 28, 1973, two days prior to its filing. In addition, the motion was conclusory and did not disclose any details of the testimony which Rebecca Doyle intended to give.[1] Furthermore, the record does not reveal that counsel for the appellant expanded on the motion shown above in his argument. It is not surprising, therefore, that the trial court ruled that it was not timely filed. The trial proceeded and the court heard all of the evidence as did the jury. After presentation of the testimony counsel for appellant moved for a mistrial and renewed the motion for severance. This was submitted without any argument and again the judge denied it (without comment). At the time that the court's charge was being prepared, counsel for appellant proposed and submitted an instruction which would have told the jury to disregard the evidence of Rebecca Doyle and not consider it against the appellant (defendant at the trial).[2] The trial court quite properly rejected this instruction for the obvious reason that this testimony was not wholly irrelevant as far as the appellant was concerned and although the government did not offer it (it was offered on behalf of Rebecca Doyle), it should have been at liberty to utilize it to the extent that it related to the issues which were being

---

1. The entire body of the motion is as follows:

1. The defendant, Jackson Willie Gant, through his attorney herein, has been recently informed on January 28, 1973 by counsel for his co-defendant, Rebecca Anne Doyle a/k/a Becky Royale, that she intends to rely at trial upon a defense antagonistic and inconsistent with the defense or defenses upon which the Defendant Gant intends to rely.

2. The trial together of such antagonistic and inconsistent defenses would result in prejudice to the Defendant Gant and is likely to distract and confuse the jury, also to this Defendant's prejudice.

2. This instruction was as follows:

In certain instances evidence may be admitted only for a particular purpose, and not generally. Rebecca Doyle's testimony relating to her use of heroin, that the Defendant Gant allegedly supplied her with heroin, that Defendant Gant allegedly struck her, and that she engaged in prostitution allegedly at Defendant Gant's request, is admitted as material as to her defense of duress only and is not admitted in connection with the issues of whether the Defendant Jackson Gant is guilty of distributing cocaine or was entrapped into doing so and have no bearing upon those issues at all.

tried. To be sure, it was prejudicial to the appellant's cause, but it was not prejudicial in the sense that it was incompetent or irrelevant or violative of a positive rule of evidence. It was not error for the trial court to reject the proposed instruction.

■ The question remains whether the trial court should have prepared its own instruction telling the jury that the defendant could not be tried for and convicted of any charge not contained in the indictment and that the evidence of Rebecca Doyle could be considered by the jury against appellant only to the extent that it related to the defense of entrapment and tended to show predisposition to commit the offenses charged in the indictment. Such an instruction was not given, but we do not detect error in the trial court's failure to compose and give such an instruction because we do not see prejudice in allowing the testimony to be generally considered by the jury against appellant. There was an ample sufficiency of evidence offered by the government in its main case establishing that the appellant had repeatedly engaged in the sale of narcotics. It also was apparent that Rebecca Doyle was his confederate in these sales. Appellant and Rebecca Doyle were traveling together in California and in Denver for the purpose of transporting narcotics and so evidence to the effect that defendant had dispensed heroin to his codefendant, Rebecca Doyle, could not produce surprise or have had prejudicial capability in view of the evidentiary background of selling cocaine. So, therefore, we do not perceive that the failure of the trial court to compose and submit a limiting instruction constituted plain error. *See* United States v. Napue, 401 F.2d 107 (7th Cir. 1968), cert. denied, 393 U.S. 1024, 89 S.Ct. 634, 21 L.Ed.2d 568 (1969); United States v. Kelly, 349 F.2d 720 (2d Cir. 1965), cert. denied, 384 U.S. 947, 86 S.Ct. 1467, 16 L.Ed.2d 544 (1966).

■ It follows from what we have said that we perceive no error in the trial court's denial of the motion for severance. This is peculiarly within the discretion of the trial court under the terms of Rule 14 and the cases. *See* United States v. Austin, 462 F.2d 724 at 733 (10th Cir. 1972) and United States v. Troutman, 458 F.2d 217 at 221 (10th Cir. 1972) and the cases there cited. *See also* 8 Moore's Federal Practice ¶ 14.04 [3] and Lowther v. United States, 455 F.2d 657 (10th Cir.), cert. denied 93 S.Ct. 139 (1972).[4]

3. We recognize that it is awkward for a trial court to have to appraise a severance problem at the beginning of a trial without any evidence, and following this to have to have a continuing obligation to consider whether a severance should be granted as the trial unfolds. United States v. Dinneen, 463 F.2d 1036 (10th Cir. 1972) recognizes that the trial court does have this continuing duty to determine whether prejudice requires the granting of severance. In Schaffer v. United States, 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960), the Supreme Court articulated this viewpoint in a case in which the issue was misjoinder of defendants. The Court said that the judge was not required to grant a severance following the dismissal of the conspiracy count which seemingly was a source of joint evidence and effort of the defendants. The Supreme Court considered it important that proper limiting instructions were given in that case.

4. In United States v. Napue, *supra*, the Court of Appeals for the Seventh Circuit dealt with the problem of failure of the trial court to give a limiting instruction. The court pointed out that

* * * some instruction (not necessarily in the form offered by the defense) on mistaken identity would have been better practice here, but we find its omission in the circumstances of this case to be mere harmless error. * * *

401 F.2d at 112. In that case the trial judge refused to give an instruction tendered by the defendant on the ground that it was argumentative. The trial judge had ruled that counsel could argue these questions to the jury. Thereafter, the attorneys argued the question and the court felt that the attorneys' arguments compensated somewhat for the lack of an instruction.

Somewhat similarly, in our case, counsel for appellant vigorously argued the limited relevancy of the evidence in question. The record shows the following:

* * * There is all this testimony about heroin, distributing heroin, but he never distributed heroin to Agent Allen.

In the final analysis the evidence in this case, as we have previously indicated, is so strong that prejudice is difficult to find. After all, this defendant was no small pusher. He was engaged in wholesale transportation of cocaine in job lots, not once but numerous times. In view of this, we fail to see that he suffered from the evidence or from the lack of any limiting instruction.

### III.

██ We have examined the numerous other complaints offered by appellant as a basis for reversal. As to the trial court's orders restricting the cross-examination of agent Allen, while at the same time allowing the government to cross-examine Gant extensively, we need only say that these are rulings which are peculiarly susceptible to trial court decision; also, these are matters with which appellate courts cannot effectively deal. The same is true of the order of the court allowing the defendant Doyle to sit close to the jury when she gave her testimony.

██ Counsel for Gant also argues that the trial court should have prevented the attorney for codefendant Doyle from asking excessive leading questions.

If he had all this heroin he was giving to Rebecca, why wasn't some heroin sold to Agent Allen? The only one who talked with Agent Allen or who said she was bringing heroin was Rebecca, and Agent Allen testified that heroin was never brought.

Now, Jack Gant is not on trial here for allegedly giving heroin to Rebecca Doyle or allegedly involving her in prostitution or for allegedly striking her. None of this is true. None of this would be relevant to anything if he were on trial here alone, and in my view you should disregard this except as it relates to her defense. She has raised the defense of duress.

5. The trial court reproached counsel for Rebecca Doyle as follows:
Well look, you are just completely leading this witness, and for a day and a half I

From the record it appears that a genuine effort was made by the trial court to prevent this and the judge finally gave up, apparently being of the opinion that counsel for Doyle was unable to ask a question which was not leading.[5] We are at a loss to know what a trial court can do when faced with this condition. The judge sought to prevent it and to help the attorney, and he did everything short of taking over the examination himself. We fail to see this as a source of error on the judge's part, and we fail also to see that there was any prejudice to the appellant arising from this.

The rulings with respect to illegal search have been considered and do not furnish any basis for reversal.

██ Finally, the court did not err in denying the appellant's pretrial motion for a copy of the Grand Jury testimony.

Appellant's counsel has conscientiously and painstakingly presented the numerous points which he regarded as sufficient to justify reversal. But from a study of the record as a whole and a consideration of the specific items advanced, we are of the opinion that the points raised do not call for reversal.

The judgment should be and the same is hereby affirmed.

have been trying to tell you how you should do it, and, please, please, this is a sensitive area, now, don't lead the witness. Let the witness testify.
He further commented:
I am criticizing you because you are asking her leading questions. You are testifying in effect, counsel. Let the witness testify.
Again he explained:
Well now you are leading her. Do you know what a leading question is?
And again:
. . . you don't put words in her mouth. I have told you and told you and told you.
Finally, in response to an objection by counsel, for defendant-appellant, that the questions were still leading, the trial judge acknowledged:
I know it, but he can't do it any differently. Go on.